FOSTER M. SHICK, APPELLEE, v. FREDERICK H. JOHNSON, APPELLANT.

FILED MAY 19, 1917.    No. 19176.

1. Master and Servant: ACTION FOR INJURY: DEFENSES: ASSUMPTION OF RISK: WAIVER. In an action by an employee for damages caused by an injury incurred in attempting an act of unusual danger, if the defense is that the danger was open and notorious, and that the plaintiff assumed the risk, and if the evidence shows that the plaintiff protested against performing the service on account of the apparent danger, and that the defendant peremptorily ordered him to perform it, the defendant will be held to have waived the defense of assumption of risk.

2. ———: ———: NEGLIGENCE: EVIDENCE. When the sole ground of negligence alleged and relied upon is that the danger was known to the defendant, and was unknown to the plaintiff, and could not have been observed by him in the exercise of ordinary care and diligence, it is not necessary to prove that the defendant peremptorily ordered him to perform the service over his protest. It is sufficient in that regard if the service rendered was in the line of plaintiff's employment and was consented to by defendant without notifying plaintiff of the hidden danger.

3. ———: ———: ISSUES: INSTRUCTIONS. When the petition in such
case contains allegations that the defendant did many things
negligently, without alleging any facts that would amount to ac-
tionable negligence except in one particular, it is erroneous to
give the whole petition in charge to the jury, and instruct them
that if they find defendant guilty of any act of negligence alleged
in the petition they shall find for the plaintiff.

4. ———: ———: ———: ———. The court in its charge to the jury
described an .alleged act of the defendant that was not of itself
counted upon as negligence justifying a recovery, from which the
jury might infer that if that act was proved they should find for
the plaintiff. This was erroneous.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Reversed.* '

*James C. Kinsler,* for appellant.

*McLaughlin & Neely, contra.*

SEDGWICK, J.

Foster M. Shick, an employee of Frederick H. Johnson,
recovered a judgment against Mr. Johnson in the sum of
$13,750 for damages caused by an injury while he was in
Johnson's employment. Johnson was insured as an em-
ployer by the Casualty Company of America, and the suit
against him was defended by the company. Afterwards
an appeal was taken to this court, but no supersedeas bond
was given. Proceedings were begun against Mr. Johnson
to enforce collection of the judgment, and thereupon he
settled with the plaintiff by giving him two promissory
notes, one in the sum of $5,000, the amount for which the
Casualty Company had insured him, and the other for the
remainder of the judgment. Mr. Shick then dismissed the
appeal. Upon motion and showing, the court found that,
by the terms of the policy of insurance, it was agreed that
the company should defend in the name of the insured any
action against him in which the company would be liable
under the terms of its policy, and that the company had
so defended the action and in the name of the insured had
taken the appeal. The motion of the company for rehear-
ing of the order permitting the dismissal of the appeal was

sustained. The order dismissing the appeal was "set aside, case to be determined in its regular order." The case was argued and submitted upon its merits.

The defendant is a contractor and builder, and the plaintiff was in his employ. The action is to recover damages for an injury sustained by the falling of a beam and column that the plantiff and other employees were attempting to place. The plaintiff in his brief states the conditions surrounding the accident as follows:

"During the month of July, 1914, the appellee was at work with two other men in the basement of a building in the process of construction in the city of Omaha. The three men were employees of the appellant, and were engaged in the erection of iron I beams in the aforesaid building. The three men had set the first iron column in place on its foundation, and had just raised the first I beam and landed it in place so that one end rested on the brick wall at the west side of the building, and the other end rested on the west bracket of the first iron column. * * * After this first I beam had been hoisted into place, wooden braces were placed against it, one on each side, for the purpose of bracing it firmly in order to prevent it from toppling over. The upper end of each of the planks, which were used as braces, was put in the angle between the web and the upper flange of the I beam, and the lower end was driven or pushed into the ground. One of these wooden braces was placed opposite each other on each side of the I beam, a short distance west of the first column. After the work had reached this stage, the appellee or plaintiff injured his finger while he was endeavoring to move an I beam lying on the ground, and immediately left the excavation and went up onto the street in order to have his finger dressed. The foreman, Frank Painter, and the other workman, Ernest H. Peters, remained in the basement while the plaintiff went up onto the street. While the plaintiff was absent from the basement, the foreman and Peters moved the derrick, which had been used in hoisting the first I beam into position, from the place

where it had been when the plaintiff left the basement to have his finger dressed, to a position farther east, in order that the derrick would be in position to hoist the second I beam into its proper place. In moving the derrick, the plaintiff claimed that the wooden braces, which had been placed against the first I beam, as hereinbefore set out, had been taken down in order to get the derrick by, and were not put back into place. The plaintiff was absent from the excavation a few minutes (about ten), and when he returned to the basement he found that the derrick had been moved by the foreman and the other workman, as stated above. The second column was then put in place, and the raising of the second I beam was commenced. The foreman, Painter, stood a short distance east of Shick, taking the slack off from the drum forming a part of the derrick, and Peters was directed to turn the windlass, by which the I beam was raised. The plaintiff stood upon the ground and steadied the I beam by holding his hand on it, as it was hoisted, preventing it from striking against the columns as it ascended. After the I beam had been hoisted to the required height, it was necessary to land it on the brackets attached to the first and second iron columns. This was the work assigned to Shick, and, as soon as the I beam had reached the desired height and the hoisting process had stopped, the foreman nodded to Shick, indicating, as the plaintiff claimed, that it was time for him to commence his work of landing the beam on the column in its proper position. Immediately upon perceiving the foreman's nod, Shick turned around and started to climb up the first iron column in order to connect the beam to the column. While he had hold of the column, it swayed and toppled over on him before he could get out of its way. * * * When he returned to the basement, * * * the plaintiff testified that he did not observe or know that the master had removed the wooden braces which held the beam and column in a secure and steady position, and that no one called his attention to the fact that the braces had been removed. After the second I beam had been

raised to the required height, and the foreman indicated by a nod of the head that the time to connect the beam to the column had arrived, Shick promptly proceeded to perform his duty. He was crushed by the collapse of the beam and column, due to the absence of braces."

When the plaintiff was testifying as a witness in his own behalf, he was questioned, and answered, as follows: "Q. Then, * * * after the beam had been raised so you could hardly touch it any more, what did Painter do? A. Well, Peters stopped turning, and Painter kept hold of the line and nodded his head to me, and I turned around and started to climb the column. Q. Now, Mr. Shick, with the situation as it was there, with the beam up as high as you could reach, or a little higher, and Mr. Peters having stopped turning the crank, and Mr. Painter facing the work and giving you that nod, what did that nod mean to you? A. That was an order for me to connect the beam to the column." The defendant objected to all of this evidence as incompetent and immaterial, and now insists that "it was wholly immaterial what the condition of the plaintiff's mind may have been at the time as to whether the alleged nod of the foreman meant anything to him, or what it meant, or 'what he understood it meant to himself,' or 'how he interpreted it to himself.'" If the plaintiff knew the existing conditions and the danger involved in attempting to climb this column under the circumstances, and had protested to the foreman against performing such a service on account of the danger, and was now relying upon the order of the foreman to proceed and climb the column for the purpose indicated notwithstanding the apparent danger in doing so, to support such a cause of action it would be necessary to prove that the foreman intended to and did give such order. Such an order of the foreman under such circumstances would preclude the defendant from availing himself of the defense that the plaintiff assumed the risk of such apparent dangers. But the plaintiff did not bring his action, and does not now present it, on any such theory. He alleged in his

petition: "That solely and entirely by reason of the carelessness and negligence of the defendant and its duly authorized foreman, Frank K. Painter, in removing the above described props, and in carelessly and negligently failing to warn or advise the plaintiff of the unsafe and dangerous condition which had been created, and of the danger arising as a result of the removal of the said props or braces, and without any negligence or carelessness on the part of the plaintiff whatsoever, said plaintiff was injured as hereinafter set forth." And he says in his brief: "The statement that the plaintiff was ordered to climb up the iron column was a mere incident, and the plaintiff's case does not in any way depend upon the question of whether or not such order was given. The negligence complained of was that the defendant, acting through its foreman, failed to notify the plaintiff of the removal of the braces after he returned from the street, and the further fact that the foreman permitted and allowed the plaintiff to climb up the iron column without warning or advising him of the removal of the props, and of the dangerous and unsafe condition of the premises, which condition was a result of changes made during the plaintiff's absence." A nod of the foreman's head under the circumstances would be wholly inadequate as a peremptory order that the plaintiff should proceed to climb the column against his protest that it was dangerous to do so with the braces removed. And evidence that plaintiff so interpreted the nod would be incompetent upon such an issue, but as an indication that they were ready to have the column attached to the I beam, such evidence might be competent.

The issue of negligence stated in the petition and tried by the parties seems to be as the plaintiff states: "That the defendant, acting through its foreman, failed to notify the plaintiff of the removal of the braces after he returned from the street, and the further fact that the foreman permitted and allowed the plaintiff to climb up the iron column without warning or advising him of the removal of

the props, and of the dangerous and unsafe condition of the premises."

The petition was long, and contains several allegations that the defendant negligently did various things, without alleging any fact that would amount to actionable negligence except in the one particular before stated, and the court in its instructions recited to the jury substantially all of the allegations of the petition. The court gave a very suitable instruction for the plaintiff upon the issue of negligence presented by the petition, and then also gave numerous instructions tending to confuse the issues presented. In one instruction the jury were told: "The plaintiff claims that defendant's foreman ordered him to connect the second beam to the column which fell, and that such order was conveyed to the plaintiff by the defendant's foreman moving or nodding his head, and the movement of said foreman's eyes from the plaintiff to said column, and that thereupon plaintiff, understanding that he was ordered to ascend said column, proceeded to do so in compliance with such order from the foreman; this is denied by defendant; and it is for you to determine, taking into consideration all of the facts and circumstances of the case as shown by the evidence, whether or not such order was given. In this behalf you are instructed that, in giving an order or direction by a foreman to a servant working under his supervision, it is not absolutely necessary that such order or direction be given by word of mouth or word spoken, but the same may be conveyed by gesture, sign, or signal, such as a significant movement or nod of the head and movement of the eyes by the person wishing to convey to such workman such order or command. It is sufficient if the person so making such gesture of the head and eyes meant to convey to the workman the order to do the act in question, and the workman, so understanding it, undertook to comply with such order."

This instruction was clearly erroneous. In connection with the statement of the case as alleged in the petition, it conveyed to the jury the idea that they might find for the

plaintiff upon the negligence of this nod of the head alone. Whereas that evidence was of no importance, unless the defendant had, in the plaintiff's absence, made the conditions such that it was unusually dangerous to attempt to connect the I beam with the column, and the plaintiff was not aware of such change in conditions and could not have observed it by exercising reasonable care and caution. It is not clearly shown why the plaintiff did not observe that these braces had been removed. They are described as timbers or planks, and must have been very prominent, extending, as they did, from the I beam, eight feet or more from the floor, to a considerable distance on either side, where they were firmly planted in the ground. If he did observe, or might with reasonable care have observed, that these braces had been removed, and proceeded to connect the I beam without protest on account of the increased danger, he assumed the risk of so doing, and a nod of the forman's head would in any view of the matter amount to no more than consent that plaintiff might do so; it could not be considered as a peremptory order against plaintiff's protest which might result in his discharge if he failed to obey.

The court erred, also, in reciting the whole petition to the jury. If the evidence of the removal of the braces and of due care and caution on the part of the plaintiff had been sufficient, the court should have submitted to the jury the question of assumption of risk.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

HAMER, J., not sitting.