EDWARD F. DIETER, APPELLEE, v. DOOLITTLE PRODUCE COMPANY ET AL., APPELLANTS.

FILED FEBRUARY 1, 1919.   No. 20268.

1. **Master and Servant:** ASSUMPTION OF RISK. An employee by his contract of employment assumes the ordinary risks and dangers incident to his employment. If, however, the machinery or appliances furnished by the employer are known to the employee to be defective and dangerous, but he is induced to continue in such service on the promise of the employer to remedy such defect, and he relies on such promise, he does not thereby assume the risk of an injury he may sustain by reason of such defective machinery or appliance.

2. **Evidence** examined, discussed in the opinion, and *held* sufficient to support the verdict.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Hoagland* and *George N. Gibbs,* for appellants.

*Beeler & Crosby, contra.*

DEAN, J.

Plaintiff is a baker by trade. He sued defendants to recover for personal injuries sustained by the bursting of a hot-water tank in defendants' bakery while in their employ. He recovered a verdict and judgment thereon for $1,300, and defendants appealed.

The bakery consists of a salesroom fronting on the street with a bakeroom in the rear. The tank in

question was an ordinary 30-gallon hot-water kitchen range tank, formerly used in connection with a kitchen range, that was converted by defendants into a steam boiler and installed by them in the bakeroom before plaintiff's employment began. It was used to generate the steam used by bakers to keep the bread moist. The force of the explosion carried the tank through the ceiling of the bakeroom, the ceiling of the room immediately overhead, and through the roof. When the tank exploded plaintiff was alone in the bakeroom. He sustained severe face and body burns. A leg was broken in two places. A rib was broken and an eardrum punctured. Some of his injuries are permanent; the broken leg being two inches shorter than normal.

Plaintiff pleaded generally defendants' negligence in supplying neither a steam gauge nor "a proper boiler of sufficient strength" and "in allowing said boiler to remain in its defective condition." In view of plaintiff's allegations and evidence on this point that will be presently noted, the court did not err in overruling "defendants' motion to withdraw from the jury the issue of a defective boiler outside of the question of a steam gauge."

The plumber who was employed by defendants to convert the tank into a steam boiler and install it testified that he did so under protest, and that he told one of the defendants at the time that the tank as installed was unsafe. He said that the 40 feet of steam coil was sufficient to heat a boiler of 300 gallons capacity, and that the 30-gallon tank to which the coil was attached would generate too much steam for safety, and that the small tank was not of sufficient strength to withstand the ordinary pressure.

It is admitted by defendants that no steam gauge was ever attached to the tank, but considerable stress is laid on the fact that a "pop-off valve" was attached thereto before plaintiff entered their employ.

On this point Frank T. Sullivan, a plumber, as disclosed in defendants' brief, testified: "Q. Is there any accuracy as to the pressure your pop-off is withstanding, unless it is tested by a steam gauge? A. No; you can't tell a thing about it without you compare it with the steam gauge." On the cross-examination by defendants, W. T. Green, a plumber, testified: "Q. What benefit would a steam gauge have been on the tank, with a pop-off that was working there that would pop off at about 10 pounds, to prevent a blow-out? A. There would be no way of telling, unless this pop-off would be set by a steam gauge, to tell whether it was set at 10 pounds or 100 pounds, and by using a steam gauge it would indicate the amount of pressure on the boiler at all times."

Defendants argue that the testimony respecting installation has no bearing on the issues. It seems to us that the court did not err in admitting it. The evidence bore on the question of defendants' negligence as to whether they installed and retained a defective boiler without a steam gauge. The evidence was explanatory of the accident. It is reasonable to believe that the jury concluded that, had there been a steam gauge on the boiler, a reasonably prudent man would have discovered the danger in time to have prevented the explosion, or in any event to have made his escape. It was not shown in the premises that plaintiff was other than a reasonably prudent and careful man, and the jury after seeing and hearing him testify were better able to pass on that question than a reviewing court can be with only the typewritten page for its guidance. There is testimony from which the jury could find that plaintiff was not placed in charge of the bakery with instructions or permission to procure such fixtures or safety appliances as he deemed necessary.

Plaintiff was a baker. It does not appear that he was conversant with steam fitting or plumbing. In defendants' brief it is said: "It appears that in mak-

ing bread it is necessary to use a small amount of steam or vapor in the proof-box in order to moisten the bread, and this can be secured in various ways. In some bakeries the steam is generated by heating a pan of water on a gas stove, or by placing a heated brick in a pail of water, or by conveying the steam from the mouth of a teakettle through a rubber hose to what is called the proof-box.'' This statement naturally sug-gests that, if any of the agencies for creating steam so pointed out had been used by defendants, there would have been no explosion. It is also said: ''In the instant bakery a pipe extended from the top of the boiler to the proof-box with a stop-cock near the end, through this pipe the small amount of steam was con-veyed as needed in the baking of bread.''

Defendants maintained their living rooms over the bakery. It was shown that the rooms were heated by steam radiators that were attached to the hot-water tank in question, and that they were so installed to relieve in part the steam pressure in the tank. It is not in evidence that in May, when the explosion oc-curred, that steam was permitted to circulate in or escape through the radiators, and without proof the jury would not, of course, assume that such was the case. So that the radiators at the time of the explosion afforded no relief from excessive steam pressure in the tank.

Defendants argue that plaintiff assumed the risk of his employment. On the cross-examination plaintiff tes-tified: ''Q. You never went up and told her that you were going to quit work unless she fixed it and got a steam gauge, did you? A. No; I didn't think it was necessary. She had promised to put it on.'' It is in evidence that on two or more occasions one of the defendants told plaintiff in response to an inquiry by him that a steam gauge had been ordered. Defendants complain because the petition does not in direct terms allege a reliance by plaintiff on the promise, but the

attention of the district court was not challenged cn this point, and the case was apparently tried on the theory that reliance on the promise was pleaded. It is in evidence that plaintiff repeatedly requested and defendants as often promised to install a steam gauge, and that he remained in their employ in reliance on their promise. The jury were justified in finding from the evidence that plaintiff did not assume the risk attendant upon his employment, but that he remained in defendants' employ in reliance on their promise to furnish needed safety devices. *Sapp v. Christie Bros.,* 79 Neb. 701; 18 R. C. L. 696, sec. 180.

Milton Doolittle, one of the defendants, testified that immediately after the accident he examined the faucets that permitted the steam to escape from the bakeroom and permitted it to enter the bread box, and they were both closed, and the faucet of the intake water pipe was open. Defendants asked for this instruction: "The jury are instructed that, if you find from the evidence that the explosion of the boiler and the injury to the plaintiff thereby was caused by plaintiff turning cold water into such boiler and pipes connected therewith, while the same was very hot and without sufficient water therein, then such act would be deemed gross negligence on the part of the plaintiff, and he cannot recover in this action." The court did not err in refusing to give the instruction, because this point was apparently covered by the court's instruction on the rule of comparative negligence. In view of the injuries that plaintiff sustained and the amount of the verdict that he recovered, it seems to us that the jury must have taken into account the negligence, if any, that was contributed to the accident by plaintiff.

Objections are made to certain instructions given and the refusal to give other instructions offered by the defendants. We have examined the points raised on this question and on all of defendants' assignments, and do not find that error can be predicated thereon.

The testimony conflicted on every material point, but, having been fairly submitted to the jury under proper instructions, we are not disposed to disturb the verdict. Finding no reversible error, the judgment is

AFFIRMED.