Dugenske v. Wyse, 194 Wis. 159.

---

DUGENSKE, Respondent, vs. WYSE and another, Appellants.

*October 13—November 8, 1927.*

*Master and servant: Safe-place-to-work statute: Agricultural labor: Operating silo filler: Questions for jury: Proximate cause: Contributory negligence: Opinion evidence: As to simple mechanical device: New trial: Cumulative evidence: Discretion of court.*

1. Although those engaged in agricultural pursuits and in domestic labor are generally not affected by the safe-place-to-work statute, one feeding a silo filler operated by a gasoline engine had a cause of action for personal injuries under the statute if the place of his employment was not so free from danger to his life or health as the nature or the place of his employment would reasonably permit. p. 162.
2. Where a defective apron on the feeder of a silo filler was removed and a board placed over the feedway, and plaintiff's hand, while he was feeding the machine, was drawn into the cutting knives and injuries were sustained, the question whether the operation of the filler without the apron equip-

ment complied with the safe-place statute was for the jury; and the refusal to permit expert testimony as to whether the absence of the apron equipment enhanced the danger to the operator was not prejudicial, where the mechanism of the filler was simple and the jury could determine such fact without the aid of experts. p. 165.

3. If issues are presented upon which rational minds may reasonably differ, a jury question is presented; and the questions whether the negligence of the defendants in failing to equip the filler with an apron constituted a proximate cause of plaintiff's injury, and whether the plaintiff was negligent in the operation of the filler, are for the jury. p. 166.

4. The granting or refusing of a motion for a new trial on the ground of newly-discovered evidence is highly discretionary; and there was no abuse of discretion in denying a motion for a new trial based on evidence that at the time of the accident the silo filler was not being operated in its ordinary form, as the evidence was cumulative merely and could have been readily produced at the trial. pp. 166, 167.

APPEAL by the defendants from a judgment of the circuit court for Green Lake county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The defendants, who were farmers and copartners, were the owners of a silo filler operated by means of a gasoline tractor engine. No detailed description of this filler will be attempted, because it was of the type which in its essential features was not different from innumerable other appliances of this kind in use on farms in this state and elsewhere. The plaintiff at the time of the injury was also a farmer, operating as such on a tract of land in close proximity to defendants' farm.

The filler was over thirteen years old, and by reason of its age and wear was somewhat dilapidated. The apron at times would become entirely unserviceable, and such was the case on the 25th day of September, 1924, the date of the injury. In order to enable the defendants and their employees and assistants to continue in their operations of cutting the cornstalks by means of the filler, the defective

apron was removed and a board was placed over the feed-way. In the absence of the apron, which served the purpose of a conveyer, an additional feeder was provided for, so that thereafter two men were employed as such instead of one. The bundles of corn were unloaded from a farm wagon located in a position opposite where the feeders stood, were then thrown onto the platform, and then deposited on the trough leading to the rollers and knives, and, after being somewhat straightened out preparatory to cutting, were shoved by the plaintiff (who occupied the position of feeder nearest to the rollers) into the rollers, where they then proceeded into the knives.

There is evidence in the case that when the apron was used the plaintiff could perform his service several feet farther back from the rollers, because the operation of the apron conveyed the cornstalks forward without the application of force by the feeder; that when the apron had been removed it was necessary for the plaintiff to apply considerable force from time to time in order to pass the stalks into and through the rollers. The rollers were designed to compress the stalks preliminary to the cutting process. The evidence of the plaintiff and of one Fenske, who was his assistant, shows that while the plaintiff was engaged in feeding this machine in the usual and ordinary manner his right hand was drawn into and through the rollers so that it came in contact with the knives, whereby he sustained injuries which necessitated the amputation of all of his fingers and his thumb.

The case was submitted to a jury upon a special verdict consisting of four questions, and these questions were answered as follows: 1. The absence of the apron rendered the machine unsafe for the person feeding who stood nearest the knives. 2. The absence of the apron was the proximate cause of plaintiff's injury. 3. There was no want of ordinary care on plaintiff's part that proximately contributed to

produce his injuries.    4. The damages were fixed at the sum of $2,500.

Upon this verdict judgment was ordered in plaintiff's favor, and upon the entry thereof the defendants prosecuted this appeal.

For the appellants there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

For the respondent there was a brief by *Martin & Kelley* of Fond du Lac and *George E. Ostrander* of Princeton, and oral argument by *J. L. Kelley*.

DOERFLER, J.    Plaintiff's cause of action is grounded upon an alleged violation of the provisions of ch. 101 of the Statutes, constituting what is known as the safe-place statute.    This statute has been so often construed by this court, and its provisions are so familiar to the profession in this state, that no useful purpose will be served by setting forth the same in detail.

While those engaged in agricultural pursuits and in domestic labor are quite generally not affected by the statute, there is one pronounced exception under which this statute may become applicable, viz.: where industry is carried on upon a farm or in a home by means of mechanical power. Sec. 101.01 (1), Stats.    It being conceded that this silo filler was operated by power derived from a gasoline engine, the plaintiff, who was engaged in feeding this machine, would therefore have a cause of action against the defendants under the safe-place statute, provided his place of employment was not safe (that is, so free from danger to his life or health as the nature of the employment, or the place of employment, . . . would reasonably permit).    See sec. 101.01 (11).

It is charged by the plaintiff that the absence of the apron resulted in making both his employment and his place of employment unsafe.    Opposed to this, the learned counsel

for the defendants strenuously assert that the absence of the apron did not increase plaintiff's hazard; that the apron was not designed as a safety device, but as a mere labor-saving appliance; in other words, that there was no more danger to the feeder in the operation of this machine when it is operated as it was in the instant case at the time of the accident than when operated while the apron was functioning. The issue is therefore squarely presented, and if it is one upon which rational minds may reasonably differ a jury question is raised.

Feed cutters have been in use upon farms in this state for a great many years, and prior to the advent of the automobile this instrumentality was largely used in cities and in villages. Time is not so remote in the past where feed cutters were operated by hand power. We can also recall the operator who turned the crank with one hand, and fed the grain between the rollers under the knives with the other hand, with gearing fully exposed and unprotected. This, however, was long before the day of the enactment by the legislature of the safe-place statute. Innumerable accidents were the result of such operations. Most of those who have arrived at maturity can still recall the advent of the silo filler. The idea that green corn, after having gone through the process which is now in vogue preparatory to its being preserved in a silo, could be used for winter feeding as a nourishing and healthful food for cattle, did not dawn upon the minds of the farming community until a comparatively recent date. However, since the advent of the silo its usefulness and practicability spread with such rapidity that today there is hardly a progressive farm in existence where it does not exist and is not in use. Like all new inventions and discoveries, the mechanical process necessary has been the subject of development. It was not long after the advent of the silo filler that it was realized that coincident with its use the operators thereof were exposed to great danger

to life and limb, as was manifested by the numerous accidents arising from its operation. In the pursuit of mechanical research the apron was devised, and to our minds it is quite clear that it was intended not merely as a labor-saving device but as a safety appliance, and at the present time but few silo fillers can be found in operation anywhere which are not equipped with the apron.

This is an age of industrial progress. Mechanical power and appliances are in use to almost the fullest extent, both in the factory and on the farm. The flail and scythe have long since disappeared. Labor-saving machines were invented to act as a substitute for hand work and power in nearly every industrial pursuit, and their use has contributed largely to the welfare of mankind. As an incident to the increase of mechanical devices and power, there followed innumerable accidents as a result of their use, and it then dawned upon the law-making power that life, limb, and health must not be sacrificed for the benefit of utility. This realization was the inducing cause of the enactment of the safe-place statute.

Concededly the silo filler is a labor saver; it is an economic factor; but it is well recognized by economists that the preservation of life, limb, and health is also involved as an economic factor, greater even and more essential to well-being than utility. Aprons similar to the one here involved have been in use for many years on threshing machines and on saw-mill machinery. There they act both as a labor saver and as a safety device. When the silo filler is operated with an apron, the operator merely places the bundles of cornstalks into the feed trough, where they are then carried to the rollers and knives. True, it appears from the evidence that the bundles of stalks are at times loose and need adjustment, but when this is performed the mechanical devices on the machine are sufficient to bring the stalks in contact with the rollers and the knives. The evidence also tends to show that in the absence of an apron the operator is

required to take a position closer to the rollers, thus enhanc-
ing the hazard. When, however, the apron is absent and a
board is substituted in its place, the stalks must be pressed
forward with force to enable them to pass through the rollers
to the knives. It is the extra force which at times must be
applied that constitutes the danger to the operator. Unques-
tionably the jury in the instant case, composed largely of
farmers, fully realized the enhanced danger.

The plaintiff had never before operated a silo filler with
the apron absent. The degree of force necessary to be
applied in feeding therefore constituted a new and unknown
factor to him. He was required to exercise his judgment as
to where to apply the force most effectively, and as to the
degree of force to be applied. While operating the machine
in the usual manner the accident happened, and the jury
attributed it to the defective appliance.

It is true that a silo filler is a simple device. Any person
of ordinary intelligence must be presumed to know that if
his fingers got between the rollers and under the knives,
serious consequences would result. But the facility with
which an accident might happen when the operator performs
the duties performed by the plaintiff in the ordinary way
is not so readily or thoroughly understood. We therefore
conclude that the question of whether or not the employment
or place of employment was as safe as the nature of the
employment would reasonably permit presented a question
for the jury.

Counsel assigns as error the ruling of the court wherein
it refused to permit the introduction of expert testimony
on the subject of whether the absence of an apron enhanced
the danger to the operator. Where the machinery is compli-
cated and not readily understandable by a court or jury,
such evidence undoubtedly would be helpful, and the refusal
to permit its introduction may be deemed prejudicial error.
Under the facts in this case, however, where the mechanism
was simple and where the jurors could determine this ulti-

mate fact for themselves quite as well as any expert, the ruling, to say the least, is deemed unprejudicial.

Whether the negligence of the defendants in failing to properly equip this silo filler with an apron as a safety device, under all the facts and circumstances in this case, constituted the proximate cause of the injury, also clearly presented a jury issue.

On the subject of contributory negligence there was considerable evidence tending to show that the plaintiff immediately prior to the accident applied several cobs of corn to the rollers. This evidence was contradicted, and whether the accident resulted from these acts or from the operation of the filler in the manner testified to by the plaintiff presented a jury issue. The burden of proof to show contributory negligence rested upon the defendants, and this burden evidently was not met. Outside of the instances above referred to, there is no evidence in the case upon which the jury could find contributory negligence.

After verdict the defendants made a motion for a new trial on the ground of newly-discovered evidence, and this motion was based upon affidavits of a number of persons who testified that the plaintiff had admitted to them that the accident was entirely his own fault. Other affidavits were to the effect that at the time of the injury there were no cornstalks immediately available for the operator; that one load had fully been delivered to the machine and the stalks cut, and that the succeeding load had not yet arrived at the machine to be cut. Among the persons who made an affidavit to this effect was the wife of one of the defendants: The engineer deposed that when the accident happened the speed of the machine had been considerably diminished for the reason that cornstalks were not then immediately available. The statements in the affidavits as to the admissions were merely cumulative, because testimony of the same nature had been introduced on the trial. The facts stated

in the affidavits tending to show that the machine was not then operating in its ordinary form could quite as readily have been obtained at the trial as after the trial. Both the plaintiff and his assistant, Fenske, had testified on the trial that the accident happened while plaintiff was operating the machine in the usual way, and that cornstalks were available at that time.

The granting or refusing of a motion for a new trial upon the ground of newly-discovered evidence is highly discretionary, and we are of the opinion that the court did not abuse its discretion.

The case came clearly under the safe-place statute, and the issues having been resolved by the jury in favor of the plaintiff, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.