Tomlin, Respondent, vs. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant.

*January 6—February 4, 1936.*

For the appellant there were briefs by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the respondent there was a brief by *Clifford & Dilweg* of Green Bay, and oral argument by *G. F. Clifford.*

MARTIN, J. This action is brought under the "safe-place statute," sec. 101.06, Stats. Said section provides:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

Sec. 101.01 (11), Stats., so far as material here, provides that the term "safe" as used in sec. 101.06, Stats., in reference to public buildings, means "such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, or tenants, . . . as the nature of the employment, place of employment, or public building, will reasonably permit."

The appellant, as owner of the warehouse in question, owed such duty to the plaintiff as is enjoined by this statute. A place must not only be reasonably safe, as it was required to be by our common-law decisions, but it must be as "free from danger as the nature of the place will reasonably permit." *Bunce v. Grand & Sixth Building, Inc.,* 206 Wis. 100, 104, 238 N. W. 867; *Allison v. Wm. Doerflinger Co.* 208 Wis. 206, 210, 242 N. W. 558; *Washburn v. Skogg,* 204 Wis. 29, 34, 233 N. W. 764, 235 N. W. 437; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 174, 144 N. W. 650.

The plaintiff claims that the shelf or bracket with which his head came in contact was so designed, constructed, placed, and maintained as to be unsafe and dangerous to frequenters, licensees, and the employees of the Brown County Warehouses, Inc. It is further claimed that at the time in question the portion of the warehouse adjacent to the space leased to the Brown County Warehouses, Inc., was poorly lighted, and the columns, particularly the brackets thereon, were not painted so as to attract the attention of frequenters and persons on said premises to the location, position, and danger of said brackets. Several witnesses testified relative to the design and location of this fire-extinguisher shelf or bracket on the steel "I" beam.

Fred Sloan, a witness for the defense, testified that he was a division engineer employed by the defendant railroad company, and prior to May, 1931, had charge of the Green Bay division. On cross-examination he testified that the fire-

extinguisher bracket could be placed between the flanges of the "I" beam; that if so placed there would be less projection, which would be an element of safety. He further testified as follows:

"*Q.* So if this bracket was knee level up here and the fire extinguisher stood above it would be up here, wouldn't it? *A.* Yes.

"*Q.* And you think you would stumble over that? *A.* No, not if it was that high.

"*Q.* You would have a hard job stumbling over it? *A.* Yes, sir.

"*Q.* Then it would be safer, wouldn't it? *A.* I expect it might be.

"*Q.* With reference to the ease of using it, it would be easier to use on that level? *A.* It would be easier to lift the fire extinguisher off the bracket.

"*Q.* Now, Mr. Sloan, you realize as an engineer, designing factories, that the element of projection at eye level is a hazard, especially steel projection, don't you? *A.* Why, yes.

"*Q.* Would it be possible to cut this off and round it so there wouldn't be any square corners? *A.* Yes.

"*Q.* That would be a practicable manner? *A.* Possibly.

"*Q.* And it would hold that fire extinguisher without interfering with it in any way, wouldn't it? *A.* Yes, the fire extinguisher is round.

"*Q.* So this type of bracket could be changed so as to render it more safe and yet have a practicable bracket isn't that a fact? *A.* Yes, that is true.

"*Q.* And it would be reasonably safe having in mind that it was to be used in this kind of a warehouse, is that right? *A.* Yes, sir."

Mr. Fleck, a general construction contractor, engaged mostly in industrial construction such as factories and warehouses, testified that he was familiar with the construction of brackets for fire extinguishers; that the bracket in question would be safer if the corners were rounded and if it had a round edge at the bottom; that it would be safer if it were located six or eight inches higher on the "I" beam; and that

it would be less dangerous if it were located a foot and a half from the floor.

A Mr. Hansen testified that he was engaged in general construction work, was familiar with the construction of warehouses, the location of "I" beams, and with the attachment of brackets to "I" beams; that in his construction work he had put up brackets for fire extinguishers in factories and warehouses. He testified there were different ways in which the bracket could have been made safer; that one simple way would be to have nailed a two-by-four around the edge of the bracket and cut the corners off; that the bracket would be safer if it did not have a square corner. He further testified that the location of the bracket on the "I" beam was more dangerous at eye level than at a lower level.

In *Bent v. Jonet,* 213 Wis. 635, 639, 252 N. W. 290, this court said:

"The objective of the statute is to insure safety by the broadest sort of provisions with respect to the kind of places affected."

The appellant's counsel states in his brief:

"We will for the present purposes of this argument regard Tomlin as a frequenter of the defendant. It is our belief, however, that he was not in the position of a frequenter, but was in the leased premises as an employee of the tenant and that in view of the terms of the lease his sole remedy is against the employer."

It is conceded that the defendant's warehouse is a public building within the meaning of the "safe-place" statute. While it is true that the plaintiff was an employee of the Brown County Warehouses, Inc., he was none the less a frequenter of the defendant's premises when injured. The accident occurred on a portion of the premises not leased to the tenant, but at a place where the employee frequently was in the performance of his work. Whenever the leased premises

were piled full of sugar, it is admitted that, in order to get from one pile to another, the employees of the tenant were obliged to walk off from the leased premises. The defendant knew the use that was being made of its warehouse beyond the strict confines of the lease. The bracket with which plaintiff's head came in contact causing his injury was located within two feet from the tenant's leased premises. It cannot be claimed, under the conceded facts, that plaintiff was a trespasser at the time and place of the accident. In *Washburn v. Skogg, supra,* it is held:

"A frequenter is any person not an employee 'who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser.' "

In *Bunce v. Grand & Sixth Building, Inc., supra,* it was urged that, because he had engaged an architect to prepare the plans for the remodeling and construction there involved, the owner could not be held guilty of negligence. The court said:

"Although the statute proclaims that 'every architect shall so prepare plans for the construction of . . . such public buildings as to render the same safe,' *the duty of rendering the place safe is primarily and positively placed on the owner,* and that he procures an architect does not relieve him from his obligation in that regard."

We find no provision in the lease from the defendant railroad company to the Brown County Warehouses, Inc., which would in any way affect the plaintiff's cause of action. There would be merit in counsel's contention if this were an action under the common law. The defendant's duty in the instant case is fixed by statute. As indicated in the above quotation from the *Bunce Case,* the duty of rendering the place safe (within the meaning of the "safe-place" statute) is primarily and positively placed on the owner.

Appellant contends that the court erred in not granting a new trial because the answer to Question No. 8 of the special

verdict was perverse. The rule in this state that the findings of the jury, unless contrary to physical laws, ordinary human experience, or all reasonable inferences, must stand as verities if there is any credible evidence to support them, is too well established to require extended discussion. See *Sheehan v. Lewis,* 218 Wis. 588, 260 N. W. 633, 636, and cases there cited. In the instant case, the eighth question of the special verdict deals with the comparative negligence. The jury fixed the defendant's negligence at ninety-five per cent and the plaintiff's negligence at five per cent. The defendant's negligence rests upon the violation of a statutory duty. The plaintiff's negligence rests upon some degree of failure to exercise ordinary care. The negligence is entirely different in character. In *Bent v. Jonet, supra,* the jury found the defendant to be ninety per cent negligent and the plaintiff ten per cent negligent. It was there contended that the verdict of the jury with respect to. comparative negligence was against the great weight and clear preponderance of the evidence. This court said:

"The negligence of plaintiff and defendant is entirely different in character, and this court cannot, as a matter of law, say that one was greater than the other. The question was for the jury."

The court further said: "This court has held, both in *McGuiggan v. Hiller Brothers,* 209 Wis. 402, 245 N. W. 97, and *Brown v. Haertel,* 210 Wis. 345, 244 N. W. 630, that only in rare instances could this court reverse a jury's finding with respect to the comparative negligence of plaintiff and defendant, and then only in cases where the negligence of each was of the same kind or character."

The verdict in the instant case has met with the approval of the trial court.

*By the Court.*—Judgment affirmed.