Tiemann, Respondent, vs. May and another, Appellants.

*May 8—June 4, 1940.*

L. E. *Vaudreuil* of Kenosha, for the appellants.

For the respondent there was a brief by *Taylor, Phillips & Taylor* of Kenosha, and oral argument by *Matt Taylor* and *David L. Phillips*.

WICKHEM, J. Defendants' principal contention is that the evidence does not support the jury's finding that defendants violated the safe-place statute. This calls for a review of the facts.

Defendants own a farm in Kenosha county. Plaintiff was an employee of defendants. In 1935, defendants purchased a 1935 model Case tractor and corn binder, equipped with a device known as a power take-off. When assembled and in working order the tractor not only pulled the corn

binder but through the power take-off and attached shaft furnished the power to run the machinery of the corn binder.

As indicated in the photograph, the tractor had a type of seat customarily used in farm implements. Under the seat was the power take-off and the shaft leading to the binder. The latter revolved when the binder was in operation. A shield, which was fastened somewhere under the seat of the tractor, covered this shaft for a distance of about nine inches back of the seat. The shaft has a universal joint which is about thirty-one and one-half inches from the rear edge of the seat. The binder contains a tripping device so that bundles may be discharged on the ground, and this device is worked by a rope extending from the tripping device and fastened onto the seat of the tractor. Plaintiff was accustomed to the handling of different types of farm machinery and was an experienced farm worker. On September 24, 1938, he was using the corn binder and tractor. He fastened the rope to the tractor in the usual manner, worked all morning, re-

turned at 1 o'clock in the afternoon and cut corn until the time of the accident. At the time of the accident when he pulled the rope the tractor was in a straight line with the corn binder, and at that time he either lost his balance or in some fashion was pulled off the seat, and his glove and eventually his arm became tangled in the rope and twisted around the shaft. A portion of his arm was pulled off, and further amputation was required.

The question presented upon these facts, none of which are in serious dispute, is whether it was open to the jury to conclude that there had been a violation of sec. 101.06, Stats., which, so far as material, reads:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe. . . ."

Sec. 101.01 (1), Stats., provides as follows:

"The phrase 'place of employment' shall mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly, employed by another for direct or indirect gain or profit, but shall not include any place where persons are employed in private domestic service or agricultural pursuits which do not involve the use of mechanical power."

Sec. 101.01 (11), Stats, provides:

"The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, or tenants or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to

adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will reasonably permit."

By the terms of sec. 101.01 (1), Stats., the safe-place statute does not impose any duties as to any place where persons are employed in agricultural pursuits which do not involve the use of mechanical power. It does, however, plainly apply to all such places where the activities there involve the use of mechanical power. The farmer who carries on his agricultural pursuits with the assistance of devices involving the use of mechanical power is plainly covered by the act. *Dugenske v. Wyse,* 194 Wis. 159, 215 N. W. 829. These devices must be so constructed and so guarded as to make the employment and place of employment as safe as its nature will reasonably permit. This brings us to the question whether a farmer, who purchases in the open market a commonly sold and used farm implement involving the use of mechanical power and furnished with safety devices and equipment devised by the manufacturer, has, as a matter of law, discharged his duty of furnishing a safe employment or place of employment, or whether a jury, in spite of these facts, may under any circumstances find that the safety devices are not reasonably adequate to render the employment or place of employment safe. Defendants contend that to permit a jury to find a standard and commonly used farm implement unsafe puts an intolerable burden upon the farmer, who must make his purchases of expertly devised implements at peril that a jury may later find them unsafe and thus subject him to liability to his employees. It is pointed out that he must change models as new safeguards are developed in order to avoid the risk of a later jury finding that his safety devices are obsolete, and that even if he does, the jury may consider the older method and appliance superior and find the new model to be unsafe. We recognize the force of these contentions and the predicament in which any operator of machinery is placed. It is evident, however, both from the

terms of the statute and the rulings of this court upon it that the statute has put this burden and risk upon the employer, and that the determination so to do is one that this court cannot impair without usurping legislative power.

In *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 175, 144 N. W. 650, and in *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 249 N. W. 67, this court construed the safe-place statute as changing the earlier common-law rule and imposing a duty beyond that imposed at common law. It has consistently been held that the language of the statute "is plain and hardly open to judicial construction. If the statute is drastic there is no reason for thinking that it was not intentionally made so." *Rosholt v. Worden-Allen Co., supra.* The rule adopted is that "a place must not only be reasonably safe, as it was required to be by our common-law decisions, but it must be as 'free from danger as the nature of the place will reasonably permit.' " *Bunce v. Grand & Sixth Building, Inc.,* 206 Wis. 100, 104, 238 N. W. 867. Thus, the rule stated in *West v. Bayfield Mill Co.* 144 Wis. 106, 119, 128 N. W. 992, that "so long as the master uses the ordinary appliances commonly used by ordinarily prudent men, and has disobeyed no law of the land, he has fulfilled his duty, unless, perchance, such appliances are obviously dangerous," must be taken to have been repudiated by the safe-place statute and by the cases construing it. See *Bunce v. Grand & Sixth Building, Inc., supra; Tomlin v. Chicago, M., St. P. & P. R. Co.* 220 Wis. 325, 265 N. W. 72. The duty thus created has been consistently held to be nondelegable. *American Mut. L. Ins. Co. v. Chain Belt Co.* 224 Wis. 155, 271 N. W. 828. It is also established that the employer cannot defeat recovery by showing that he furnished appliances in common use. *Sparrow v. Menasha Paper Co.* 154 Wis. 459, 464, 143 N. W. 317. In that case it was pointed out that it was unnecessary to consider former holdings to the effect that a master may use appliances in common use although they may not be the safest appliances. The court stated that "such

cases have no application under the statute we are now considering." In *Bunce v. Grand & Sixth Building, Inc., supra,* plaintiff was injured when she tripped over a step in a theater toilet room. It was claimed that a competent architect had been engaged, and under those circumstances there was no liability on the part of defendant. This claim was repudiated, and it was held that procuring a competent architect does not relieve the owner of the duty of rendering a place safe. See also *Hahn v. Rothstein,* 174 Wis. 381, 182 N. W. 983, which is decided upon the same assumption although the point is not expressly treated. Harsh though this result may be, we are unable from the terms of the statute and the rulings construing it to find any ground for defendants' contentions.

All of the foregoing discussion has, of course, been upon the assumption that there is room for the inference drawn by the jury that the safety devices upon defendants' corn binder were not reasonably adequate to make the employment safe. After a careful consideration of the evidence we are of the view that there was reasonable basis for the inference drawn. The protective shield over the power shaft of this binder-tractor combination only extended some nine inches back of the seat. This, together with the fact that loss of balance upon the seat or a fouling of the trip rope in the exposed universal joint might easily subject an operator to contact with the shaft and consequent injury, gives reasonable support to a finding that the guards on defendants' machine were not reasonably adequate to render safe the employment on or about it. There were in evidence safety devices on machines of other makes in which the entire shafting or most of it was fully protected from even the possibility of a trip rope fouling or a person getting his hand into the shafting. These devices were properly in evidence as illustrations of methods by which the shaft could be adequately protected.

In view of this conclusion, we see no reason for considering plaintiff's claim that certain orders of the industrial commission apply and establish as a matter of law that defendants' machine was inadequately guarded. The most that can be claimed for such rules by defendants is that they are inapplicable, which leaves the case to be determined by the principles heretofore discussed.

Defendants next contend that the court erred, (1) in rejecting evidence that machines similarly equipped have been sold extensively on the market since 1934 and that at no time has any report been made to the company that any person has been injured in the operation of machinery; (2) that the testing engineer of the manufacturer had tested the machine involved in the action under all ground conditions and that in these tests the rope at no time came into contact with any moving part of the shafting. Considered as a species of expert testimony, this was inadmissible under the rule in *Dugenske v. Wyse, supra,* in which the court called attention to the fact that the machinery was not complicated and the jury were quite capable of determining its safety without opinion evidence. Considered merely as evidence that there had been no accidents in connection with its operation over a period of some four years or that tests disclosed no unsafe characteristics, the matter offered is so slightly probative as to the safe character of the protective devices as to lead to the conclusion that its exclusion was not prejudicial. Such evidence is generally held inadmissible because of its insignificant probative qualities and its tendency to introduce a multitude of collateral inquiries. *Kreider v. Wisconsin River Paper & Pulp Co.* 110 Wis. 645, 86 N. W. 662; *Garske v. Ridgeville,* 123 Wis. 503, 102 N. W. 22; *Bloor v. Delafield,* 69 Wis. 273, 34 N. W. 115.

*By the Court.*—Judgment affirmed.