LOLA GROAT, SPECIAL ADMINISTRATRIX, APPELLANT, V. ARTHUR CLAUSEN, APPELLEE.

298 N. W. 563

FILED JUNE 6, 1941. No. 31138.

*R. B. Hasselquist,* for appellant.

*A. C. Debel* and *Chatt & Ellenberger, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and SPEAR and FALLOON, District Judges.

MESSMORE, J.

The personal representative of the deceased brought this action, in behalf of the widow and next of kin, for the wrongful death caused by the alleged negligence of the defendant. The plaintiff's amended petition alleged negligence on defendant's part in failing to provide and maintain a guard over a revolving shaft on which oil cups and connections protruded, used in operating a silo cutter from the power take-off of a tractor, and in failing to provide and install a guard furnished by the manufacturer. Other allegations of the petition referred to section 48-412, Comp. St. 1929,

and to rules and regulations furnished by the department of labor, all of which will be discussed in the opinion as occasion requires. The petition further alleges common-law negligence on defendant's part in failing to properly guard dangerous machinery. Defendant's answer alleged contributory negligence, on the part of the decedent, more than slight and assumption of the risk. At the conclusion of all the evidence, defendant moved for a directed verdict, which was sustained by the trial court. Motion for a new trial was overruled. Plaintiff appeals.

The record discloses: The defendant is engaged in general farming and stock-raising in Washington county, Nebraska. His farm consists of 380 acres of land, all but 80 acres under cultivation, and all in one piece, with the exception of 80 acres near Nashville, Nebraska. The defendant had about 200 head of cattle, 25 to 30 hogs, and some horses. The deceased, Richard Groat, 34 years of age, started to work for the defendant about two years prior to December 14, 1938, the date of the accident, as a general farm hand, to do all kinds of work necessary and incident to feeding stock, repairing fences and buildings, etc. He lived, with his family, in a house furnished by defendant which was opposite defendant's home. In September or October of 1937 the defendant purchased a Ronning feed cutter harvester. It came equipped with a guard, to be used to cover the shafting which connected the cutter with the tractor. This guard, weighing from 10 to 15 pounds, is half-moon in shape, about three feet long, with a place on the cutter to bolt it on. The deceased on one occasion had attempted to attach the guard, but it would not fit. This occurred in 1937 when the machine was being put together. The deceased told Gordon Clausen, son of the defendant, that "he could probably use it (the shield) if he took the other shield off (referring to the funnel-shaped shield where the cutter is attached to the tractor) but it would be more dangerous without the other shield," referring to the tractor shield. When the cutter was hooked up to the Oliver tractor, owned by defendant, the deceased made a

new hitch, had the shaft sawed off by a blacksmith, as the hitch with which the cutter was equipped would not pull the shaft high enough to run a true line.

Before his employment by the defendant, the deceased had been a truck driver, and for a short period of time was. engaged, with his brother, in the garage business in Charter Oak, Iowa, as a salesman and helper. He possessed mechanical ability and at odd times had been employed in farm work by various persons, and, before he obtained steady employment with the defendant, had been employed by him at times. In the spring of 1933 he was employed by a neighbor of defendant to cut wood. He drove trucks and tractors and repaired trucks, tore down the motors, put in new pistons, ground the valves and completely overhauled them. While working for the defendant he overhauled a 1932 model Lincoln automobile and a tractor. He possessed several tools for repair purposes and was considered a good handy man with machinery.

One evening before the accident, while the deceased was sharpening knives used in the cutting machine, he complained to the defendant that such machine did not have a proper guard on it and was therefore dangerous. The defendant is purported to have said that he would see that the machine was repaired, but that he needed feed badly, and for deceased to go ahead and work with it in its present condition, and the repairs would be taken care of later. The deceased's wife claims to have heard this conversation. All of this testimony is denied by the defendant, and the record supports the denial by a preponderance thereof. The machine was not at the place mentioned when the above conversation is alleged to have occurred, had not been there for a period of 30 days, and no apparent reason is advanced as to why it should be there, in view of where it was being operated. There was no immediate necessity for feed, for the two silos were filled with fodder.

On December 14, 1938, between 9 and 9:15 in the morning the accident occurred. At the time, the machine was at the Nashville farm. Several men were employed by the

defendant to feed the machine fodder from the shocks. The machine was being operated by the deceased, whose work was to keep the machine operating properly.

When the cutter is used for cutting feed, it is connected with a power take-off on the tractor by means of a long shaft, with several universal joints and oil cups, which protrude above the surface of the shaft and are not guarded. The tractor has a power take-off under the operator's seat, which guard extended out for a distance of 10 inches, but does not cover the shaft when connected with the cutter. The shaft extends over for a distance of about 10 feet, and it is for this shaft that the manufacturer provides a guard or shield, which the defendant had not placed upon it. When the cutter is in motion, the exposed part thereof revolves very fast. The only shield is the funnel-shaped one on the tractor. The morning of the accident, evidently too large a bundle went into the machine and clogged it. The motor of the tractor stopped. The deceased mounted the tractor, started it, engaged the clutch and, as he stepped down to resume the cutting, his clothing caught in the protruding oil cups in the rapidly revolving shaft, causing him to be drawn into the machinery and resulting in his death. The motor was immediately shut off, the tractor taken out of gear, and the deceased removed to a place of safety and subsequently to a hospital.

On the morning in question deceased was wearing a new blanket-lined overall jacket, about hip length, and lined like any common suit coat. This jacket was unbuttoned and was worn outside of the deceased's overalls. It had been suggested to him by another workman that he should wear the jacket inside of his overalls, for fear an accident might happen if worn outside. The deceased had on many occasions worn his jacket unbuttoned and outside of his overalls. The day was calm, a trifle chilly, and not much wind blowing.

Conversations are related as to deceased's version of the accident. One of the workmen testified that after the accident, when he first saw the deceased, he was 15 or 20

feet from the shaft. Witness said to him: "Well, Dick, how did it happen?" To which deceased replied: "Well, I just got in too much of a hurry." One witness testified that when he came back with an armful of fodder he noticed that the machine had slowed down, and he heard something flopping like clothing, and shouted to a workman to shut off the machine. Immediately after the accident this witness helped to remove the deceased to a place of safety. Deceased was conscious at the time, asked for a cigarette, and said: "I was just in too big a hurry." Defendant testified that nothing was said at the hospital about the accident except the statement of the deceased: "Oh, I just got in too big a hurry." A sister of the deceased was present and also heard the statement. The foregoing constitutes the evidence upon which the court directed a verdict for the defendant.

Plaintiff contends that the court erred in sustaining defendant's motion to strike paragraph 6 of the amended petition, thus eliminating from the case the application of the rules of the department of labor, adopted pursuant to section 48-412, Comp. St. 1929; that likewise the court erred in sustaining defendant's objection to the admission of exhibit 10, a certified copy of the safety code adopted by the department of labor pursuant to statute.

Many cases are cited by plaintiff to support her theory of this assignment of error, that, in conformity to the statutes and at common law, a master is required to furnish a servant with a reasonably safe place in which to work and reasonably safe machinery and appliances, including proper guards for dangerous machinery. Among the most important cases announcing the rule contended for by plaintiff are: *Beard v. Chicago, M. & St. P. R. Co.,* 134 Minn. 162, 158 N. W. 815, wherein it was said: "A master is at common law required to exercise reasonable care to guard machinery that may be dangerous to operatives;" and *Wuotilla v. Duluth Lumber Co.,* 37 Minn. 153, 33 N. W. 551, in which the court held: "Although it be negligence on the part of the master to leave dangerous machinery uncovered, yet the

servant is not necessarily guilty of contributory negligence because he works in the vicinity of it, knowing its condition; the measure of the duty of the two in that regard not being the same." The *Wuotilla* case did hold, however, that an employee must, or in the exercise of ordinary prudence should, understand the risk to which these defects expose him. Other cases have been cited principally to show the adaptability of the facts to the rule as above stated, and as contended for by the plaintiff, but a careful reading of the cases is convincing that they present an entirely different picture than that apparent in the case at bar. The case most in point is *Tiemann v. May*, 235 Wis. 100, 292 N. W. 612, wherein the Wisconsin court, in interpreting the "safe-place statute," applied it to places where persons are employed in agricultural pursuits where activities there involve the use of mechanical power, and to a farmer who carries on agricultural pursuits with the assistance of devices involving the use of mechanical power. Wis. St. 1939, secs. 101.01 (1,11), 101.06. In the opinion it was said: "The farmer who carries on his agricultural pursuits with the assistance of devices involving the use of mechanical power is plainly covered by the act. *Dugenske v. Wyse*, 194 Wis. 159, 215 N. W. 829."

Section 101.06 of the Wisconsin statute, cited above, provides in part: "Every employer shall furnish employment which shall be safe for the employees * * * ." And section 101.01 (1) defines the phrase "place of employment" as meaning and including "every place, whether indoors or out or underground * * * or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is directly or indirectly, employed by another for direct or indirect gain or profit, but shall not include any place where persons are employed in private domestic service or agricultural pursuits which do not involve the use of mechanical power." Thus it will be observed that the above section of the statute applies to agricultural pursuits which involve the use of mechanical power.

Article 4, ch. 48, Compiled Statutes of Nebraska for 1929, referring to health and safety regulations, comprises sections 48-401 to and including 48-431. Section 48-409, Comp. St. 1929, in part, reads: "Every person operating a plant where machinery is used, shall * * * ." Section 48-412, Comp. St. 1929, relates to safety appliances prescribed, subject to the approval of the department of labor, and provides a penalty. Section 48-418, Comp. St. 1929, reads, in part: "Every person operating a plant where machinery is used who shall violate any of the provisions of this article, shall be liable in damages to any person injured * * * ." Section 48-419, Comp. St. 1929, provides: "The continuance by any person in the employ of any such operator shall not be deemed an assumption of the risk of such employment."

The distinction between the statutes of Wisconsin and those of Nebraska, governing the same subject-matter, is immediately apparent. The Wisconsin statutes are specific in reference to farming pursuits wherein machines are used, and are further supported by judicial opinion to such effect. We shall not recite the facts in the case of *Tiemann v. May, supra*. They are similar to the facts in the case at bar in the nature of the machine used, but distinctively different in that the employee in the Wisconsin case was injured in the usual and ordinary course of his labor and without negligence on his part. This brings us to the meaning of the word "plant," as used in section 48-409, Comp. St. 1929. Many definitions of the word are set out in the respective briefs and are of such a nature that some of them include any enterprise or business.

Plant means the fixtures, tools, apparatus, appliances, etc., necessary to carry on any trade, mechanical operation or process. 6 Words and Phrases (1st ser.) 5400; 3 Bouvier's Law Dictionary (3d rev.) 2597. The word "plant" is variously defined. Webster's New International Dictionary (2d ed.) defines it as: "4. a The machinery, apparatus, fixtures, etc., employed in carrying on a trade or a mechanical or other industrial business; as, an electric light *plant* * * * b A factory, workshop or apparatus complete; * * * as, a

bicycle *plant*." The word "trade" signifies some business or money-making occupation, as distinguished from the professions, the arts or agriculture. *People v. Kelly*, 255 N. Y. 396, 175 N. E. 108.

The foregoing definitions clearly denote that the defendant's business does not fall within the category of a plant or trade, within the concept of the provisions of the Nebraska statute above referred to. Other provisions of the statute, which will not be herein set out, but which refer to inspection of premises of plants and meetings to be held for the purpose of adopting rules and regulations promulgated by the department of labor, have never been applied to a business such as the defendant's. The cases cited by the plaintiff refer, in the main, to industrial plants, but, in any event, the workman is obligated to use the degree of care that a reasonable and prudent person would use, where he knows of the defect of an unguarded machine. We hold that the foregoing assignment of error is not well taken.

The plaintiff contends that the cases of *Dieter v. Doolittle Produce Co.*, 103 Neb. 152, 170 N. W. 833, *Sapp v. Christie Bros.*, 79 Neb. 705, 115 N. W. 319, and *Shick v. Johnson*, 101 Neb. 328, 163 N. W. 300, apply to the case at bar. The syllabus in *Sapp v. Christie Bros., supra*, sets forth the plaintiff's contention as follows: "A servant, who has been induced by a master's promise of repair to begin or continue to work with defective appliances, may use such defective appliances without being guilty of contributory negligence and without assuming the risk of injury from such defects, so long as he may reasonably expect the master's promise of repair to be kept, unless the danger from using such defective appliances is so obviously imminent and immediate that no reasonably prudent person would begin or continue to work with them." In the body of the opinion we find a well-established rule of law: "Where the servant has knowledge that the tools and appliances furnished him are defective and unsafe and he continues to use the same without objection or protest, he then assumes the risk."

The only protest appearing in the record in the instant

case is the alleged conversation had between the deceased and the defendant in the presence of deceased's wife, as heretofore related and analyzed. Suffice it to say that the plaintiff has failed in carrying the burden of proof in this respect by a preponderance of the evidence. All cases cited by her reflect a definite and certain promise to repair and definite and certain instructions given by the employer to the employee to use the defective machinery. This is not true in the instant case, and further discussion of this contention is unwarranted.

Plaintiff further contends that the court erred in not submitting her case to the jury.

We are cognizant of the effect of a peremptory instruction in favor of the defendant, and that plaintiff is entitled to have every controverted fact resolved in her favor and receive the benefit of every inference that may be reasonably deduced from the facts in evidence. *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163. We consider the evidence in conformity with this rule.

Without repeating the evidence, a brief summary warrants the conclusion that the deceased possessed good mechanical ability, had charge of and, in fact, operated the machine in question for two seasons and knew more about the machinery and any of its defects than any other person who testified. He attended to the connecting of the cutter to the Oliver tractor and endeavored to place the guard, furnished by the manufacturer, on the cutter and found that it did not fit. He made no other effort to attach the guard to the cutter. The evidence of the complaint made by deceased in a conversation with the defendant at the deceased's home, when the deceased was sharpening the knives on the machine, is not persuasive and is doubtful. The preponderance of the evidence discloses that the machine was at the Nashville farm, had been in that vicinity for a period of at least 30 days prior to the accident, and had been seen there by one of the witnesses who had passed it every day. There would be no reason for the machine being at deceased's home at the time of the alleged conversation. The evidence is undisputed

that at the time of the accident the deceased was wearing a loose, unbuttoned blanket jacket outside of his overalls and had been admonished by a fellow workman to place the jacket inside of his overalls to avoid possibility of an accident. This admonishment deceased did not heed. The accident did occur, obviously by deceased's clothing catching in the machinery, drawing him into the machine and wrapping his clothes around the shaft. While in a conscious condition and immediately after the accident, he stated that he was in "too big a hurry."

The foregoing analysis of the evidence leads us to the conclusion that the deceased was not using ordinary care for his own safety and knowingly and of his own volition exposed himself to obvious danger. Had he used reasonable care, he would, in all probability, have avoided the accident. We conclude that the contributory negligence of the deceased, under the circumstances, was more than slight, and the following rule of law applies:

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.

"Where the evidence establishes that the plaintiff was guilty of negligence more than slight, it becomes a question for the court, and it is the duty of the court to direct a verdict for the defendant." *Klement v. Lindell, ante,* p. 540, 298 N. W. 137. See, also, *Ritter v. Hering,* 135 Neb. 1, 280 N. W. 231; *Eaton v. Merritt,* 135 Neb. 363, 281 N. W. 620; *McDonald v. Omaha & C. B. Street R. Co.,* 128 Neb. 17, 257 N. W. 489.

In *Campbell v. Chicago, R. I. & P. R. Co.,* 120 Neb. 499, 234 N. W. 395, this court held: " 'An employee assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger.' *Atchison, T. &*

*S. F. R. Co. v. Wyer,* 8 Fed. (2d) 30." Reaffirmed in *Corley v. Hubbard,* 129 Neb. 38, 260 N. W. 551.

The above rule is pertinent to assumption of risk, under the facts in the instant case. The deceased knew and appreciated the danger that existed in the operation of the machine in question. The trial court did not err in directing a verdict for the defendant.

Defendant filed a motion to quash the bill of exceptions which would dispose of the case. Having determined the case on its merits, we refrain from a discussion of defendant's motion.

AFFIRMED.