YAUN, Respondent, vs. ALLIS-CHALMERS MANUFACTURING
COMPANY, Appellant.

*October 14—November 16, 1948.*

For the appellant there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* and *Irving T. Babb* of counsel, all of Milwaukee, and oral argument by *Mr. Charles B. Quarles* and *Mr. Babb.*

*Edward T. O'Neill* of Fond du Lac, for the respondent.

HUGHES, J. The respondent contends that "the rule of law governing this case is that a manufacturer of a product is liable to a user thereof who sustains injuries by reason of the manufacturer · failing to exercise reasonable care in the adoption of a safe plan or design, where such failure renders said product imminently dangerous to life and limb when used in a manner and for a purpose for which ·it is manufactured, whether the danger be open or hidden." The cases do not support the respondent's rule.

In *Flies v. Fox Bros. Buick Co.* (1928) 196 Wis. 196, 218 N. W. 855, relied upon by respondent, the Fox Company was held liable for injuries to the plaintiff Flies when struck by an automobile purchased from it by one Johnson. Liability was founded upon the affirmative negligence of the company in failing to examine the brakes of the car which it had rebuilt after it was damaged in a wreck, although it had informed Johnson before turning the vehicle over to him that it was equipped with all safety devices. The general rules of law applicable to the liability of a manufacturer were exhaustively examined in the opinion by Justice OWEN. The court there said (p. 203) :

"There is no privity of contract between Fox Brothers and the plaintiff. Any duty owing by Fox Brothers to the plaintiff, therefore, must be imposed upon Fox Brothers as a matter of law. It is a general rule that manufacturers are not liable for damages to persons with whom they have no contractual relations for personal injuries sustained by such persons because of the negligent manufacturer of their product. This for the reason, it is said, that an injury to any other person than the owner for whom the article is built and to whom it is delivered cannot ordinarily be foreseen or reasonably anticipated as the probable result of the negligence in its construction. To this an exception has long been recognized with reference to products which are inherently and normally dangerous, such as poisons, contaminated foods, weapons, explosives, and the like—products which are normally destructive in their nature. From an early day the manufacturers of such articles have been held to a very high degree of care to see to it that their poisons are properly labeled, that their foods do not contain poisonous ingredients, and that their explosives and weapons will function in a normal manner. This duty is cast upon manufacturers for the purpose of conserving life and limb."

Then, after discussing cases which tend to broaden the responsibility of manufacturers, the court said (pp. 206, 207) :

"While this doctrine may not presently be supported by the weight of authority, there is a decided tendency on the part of courts to recognize its soundness and to apply it to new situations as they arise. Thus, it is said by the Massachusetts court in *Windram Mfg. Co. v. Boston B. Co.* 239 Mass. 123, at p. 125, (131 N. E. 454, 17 A. L. R. 669) : 'A tendency appears in some recent cases to extend the class of "inherently dangerous" articles, so as to include not only those that in their ordinary state are dangerous to health and safety, such as poisons and explosives, but also those that are reasonably certain to place life and limb in peril because of negligent preparation,' citing many cases.

"The doctrine of *Devlin v. Smith,* 89 N. Y. 470, was recognized and applied by this court in *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418, where a contractor building

a defective scaffold was held liable to an employee of the company for whom it was built who was killed by reason of defective material placed in the scaffold. While the doctrine of the *Bright Case* was apparently ignored in *Zieman v. Kieckhefer E. M. Co.* 90 Wis. 497, 63 N. W. 1021, in *Miller v. Mead-Morrison Co.* 166 Wis. 536, 166 N. W. 315, and perhaps in *Kerwin v. Chippewa S. M. Co.* 163 Wis. 428, 157 N. W. 1101, it was recognized and applied in *Coakley v. Prentiss-Wabers Stove Co.* 182 Wis. 94, 195 N. W. 388, where it was held that an oil stove was imminently dangerous to human life because of its negligent or improper construction imposing liability upon the manufacturer.

"Notwithstanding the intervening cases, the case of *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418, and *Coakley v. Prentiss-Wabers Stove Co.* 182 Wis. 94, 195 N. W. 388, constituting the first and last consideration by this court of the subject, firmly entrenched in this state the doctrine that a manufacturer who places a manufactured article in trade and commerce not inherently, but, because of its negligent construction, imminently dangerous to life and limb, is liable to one who sustains injuries by reason of such negligent construction."

The *Coakley Case* above referred to placed liability upon the manufacturer of a gasoline cookstove for negligence in its construction consisting of a simple soldered joint in the pipe leading from the gasoline container at a point where it would be subjected to intense heat. When used as directed the stove leaked at the joint, causing the explosion which injured the plaintiff. There was evidence from which the jury could conclude that standard practice in manufacturing like appliances was the use of a crimped joint with the solder inside the joint, so that it would not leak when subjected to heat; and that the method used by the defendant constituted improper construction.

In *Karsteadt v. Phillip Gross H. & S. Co.* (1922) 179 Wis. 110, 190 N. W. 844, relied upon by respondent, recovery was allowed against the distributor of a washing machine and wringer when the housewife to whom it was being demon-

strated got her arm in exposed gears of the wringer. The court found there was evidence to sustain the findings of the jury that the casing inclosing the gears, while in place at the time of delivery, was removed at the time of the demonstration and that the demonstrator had failed and neglected to warn plaintiff of the existence of the danger so caused. It held that the distributor, having voluntarily undertaken the demonstration, had an obligation to use ordinary care and that the negligence of the demonstrator was attributable to the distributor as his principal.

In *Dugenske v. Wyse* (1927), 194 Wis. 159, 215 N. W. 829, the plaintiff was injured when caught in the rollers and knives of a silo filler. The court held that the case came squarely under the safe-place statute (sec. 101.01 (1) and (11) ), and that the facts presented a jury issue upon the question of whether the machine was as safe as the circumstances and use to which it was put would permit.

The proofs there offered were that the silo filler was equipped with an apron upon which the corn bundles were ordinarily laid; they then moved along the apron to a trough which carried them to the rollers and knives which cut and crushed the corn for storage in the silo. The apron was defective and at times would not function. At the time of plaintiff's injury it had been removed. There was evidence that when the apron was used the plaintiff could perform his service several feet farther back from the rollers because the apron conveyed the cornstalks forward without the application of force by the operator; that when the apron was removed it was necessary for the plaintiff to stand closer to the rollers and to apply considerable force from time to time in order to pass the stalks into and through the rollers.

The factual difference between that case and the instant case is apparent. In addition, the action in the *Dugenske Case* was against the farmer for maintaining an unsafe place of employment. Respondent does not here contend that the safe-place statute applies to a manufacturer.

· Likewise, *Tiemann v. May* (1940), 235 Wis. 100, 106, 292 N. W. 612, was an action against the employer for violation of the safe-place statute. The court there said:

"In *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 175, 144 N. W. 650, and in *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 249 N. W. 67, this court construed the safe-place statute as changing the earlier common-law rule and imposing a duty beyond that imposed at common law. It has consistently been held that the language of the statute 'is plain and hardly open to judicial construction.' If the statute is drastic there is no reason for thinking that it was not intentionally made so.' *Rosholt v. Worden-Allen Co., supra.* The rule adopted is that 'a place must not only be reasonably safe, as it was required to be by our common-law decisions, but it must be as "free from danger as the nature of the place will reasonably permit." ' "

There was no evidence adduced upon the trial of this case from which the jury could conclude that the Roto-Baler, when judged by usual standards of manufacture of hay balers, was either negligently designed or constructed so as to render the appellant liable under the common-law rule.

At the trial there were admitted in evidence illustrations of three machines involving the same principle of picking up material as employed by the Roto-Baler—an Allis-Chalmers All Crop Harvester, an International Harvester, and a John Deere Harvester—showing that on each of these the material was conveyed up a platform to the working parts of the machine, and these working parts were inclosed by metal hoods. Respondent contends that these illustrations constituted evidence from which the jury could infer that like protection by the use of hoods could have been devised for this machine.

It requires no lengthy argument to disclose that the size of aperture through which grain heads may pass in harvest may be much narrower than a windrow of hay which may be two or three feet in diameter when picked from the field for baling. This evidence offered no criterion by which to test the duties

of the manufacturer of a hay baler, and as submitted to the jury constituted an erroneous basis for determining the question of appellant's liability.

Respondent also produced the supervisor of inspectors for the industrial commission of Wisconsin who testified that in his opinion a hood-type covering of the rollers similar to that used on combines and harvesters would have prevented this accident. He further testified that he thought that the machine, to be safe, must be equipped with a quick-stopping device. When asked where he would place it he testified that it could be placed alongside the "incline" (pickup conveyor).

It is extremely doubtful that such device, no matter where placed alongside the pickup conveyor, could have been utilized by the respondent, because he testified that as he fell his fingers were caught in the nip of the rollers, which concededly travel at the rate of six feet per second. In addition, it is apparent that the witness was talking about safety devices required by the safe-place statute, which does not apply to this case.

The only safety statute of which the court is aware which applies to similar equipment, is sec. 167.12, Stats., the scope of which is expressly limited to machines operated by steam or other power for the purpose of *husking or shredding corn or cornstalks.*

The danger of the rollers was apparent in the present case. The court, in *Dugenske v. Wyse, supra,* said (p. 165):

"It is true that a silo filler is a simple device. Any person of ordinary intelligence must be presumed to know that if his fingers got between the rollers and under the knives, serious consequences would result."

Furthermore, it appears without dispute that the Roto-Baler bore a sign on the frame and immediately in front of the rollers, "Be Careful."

The respondent contends that because the rollers are dangerous when brought in contact with human flesh, they con-

stitute the manufacture of a "thing of danger" for which the manufacturer should be held liable.

The fact that an automobile properly made may cause bodily injury to its occupants if permitted to leave the highway while traveling at high speed may in a general sense make it a dangerous instrument, but that is not the kind of danger for which the courts have held the manufacturer liable.

If respondent's contention were sound, every meat grinder or other machine capable of mangling fingers would be an instrument the safe use of which would be guaranteed by the manufacturer.

We are forced to the conclusion that the hay baler when used as intended was not a thing of danger. There is no basis in the record for a finding that the respondent's injuries resulted from negligence of the manufacturer. They resulted from a mistake in the method of use of the machine and not from any inherent defect in the machine either in design or faulty construction.

The judgment of the trial court must be reversed and the case dismissed.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment for the defendant, dismissing plaintiff's complaint.

BROADFOOT, J., took no part.