Charles W. **POSEY**, Plaintiff-Appellant,

v.

**CLARK EQUIPMENT COMPANY,**
Defendant-Appellee.

No. 16766.

United States Court of Appeals
Seventh Circuit.

April 15, 1969.

Rehearing Denied June 4, 1969.

Richard M. Goodman, Paul A. Rosen, Detroit, Mich., Peter Obremskey, Lebanon, Ind., Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Detroit, Mich., Parr, Richey, Obremskey & Pedersen, Lebanon, Ind., for plaintiff-appellant.

Emerson Boyd, Lloyd H. Milliken, Jr., of Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Charles Posey brought this personal injury action against Clark Equipment Company.[1] Posey was injured at his employment while operating a fork-lift truck manufactured by Clark. He alleged negligence and strict liability in tort, as well as breach of warranty, a theory he no longer pursues. At the close of all the evidence, the district court directed a verdict for Clark. Posey has appealed.

Posey was operating the fork lift in a so-called high stack area of his employer's warehouse. A carton in which a furnace was packed fell from the top of a stack, hit Posey, and very seriously injured him. The fork lift was not equipped with an overhead guard to protect the operator from falling objects. Clark designed this type of fork lift so that, without a guard, it could enter areas such as street trucks, with low head room. The fork lift was also capable, however, of lifting an article to 106 inches, almost nine feet. Clark offered a guard as an optional accessory, and it could be installed in about ten minutes. Posey's employer did not, however, purchase a guard. Although the fork lift bore a warning to be careful, it bore no warning that a guard should be attached before use in high stack areas. The fork lift was purchased from a Clark dealer in 1957 and Posey was injured in 1964.

Posey's claim, in essence, is that Clark should have refused to sell the fork lift without a guard, or have attached a warning about using a guard in high stack areas, or both. There was expert testimony and other evidence that a fork lift capable of lifting 100 inches or more would be considered a high stacking machine, and that it is considered dangerous to operate a fork lift in high stack areas without a guard.

---

1. Jurisdiction is founded on diversity. The parties have treated Indiana law as controlling.

A June, 1957 bulletin [2] states: "Where high tiering is necessary special overhead protection for the lift truck and the operator shall be provided" and "The word 'shall' indicates provisions which are considered essential for protection of life and property." A 1951 publication [3] says: "Fork trucks capable of lifting loads higher than the operator's head should have substantial canopy guards and back guards on the face of the forks where small objects or unstable loads are carried" and a caption under a picture of a lift truck is "Fork lift truck equipped with canopy guard and back guard on the face of the forks. Fork trucks capable of lifting loads higher than the operator's head should have guards of this type." It is apparent that these statements are most directly concerned with the danger that the load being lifted will fall off the forks.

At the front of the fork lift is a double column structure called the mast. Two fork blades jut forward from it. The mast can be inclined forward or back, and the forks tilt accordingly. The forks can be raised along the mast and the mast can be extended upwards. The mast on this particular fork lift, when fully retracted, is 77 inches high. With the mast in that position, the fork lift can be driven into many low clearance areas. If the guard were installed, its top would be 83 inches off the ground and it would prevent the fork lift from entering many of these areas. It is clear, however, that this fork lift was capable of lifting objects well above the operator's head, and there is evidence that an overhead guard ought to be used when it is so operated.

May the manufacturer be held liable to an employee of the buyer, where the fork lift is designed for use both in areas where a guard is unnecessary and could not be used and where a guard may be deemed necessary, if the manufacturer fails to supply a guard and to give warning that the guard should be installed during operations of the latter type?

On the day of the accident, Posey, using the fork lift referred to, and another employee with a different type of lift truck, were organizing and consolidating stacks of cartons in their employer's warehouse. Each carton contained a furnace unit, was three feet high, three feet long, and two feet wide. The full stacks contained four or five cartons. Posey was picking up single cartons and short stacks from among the full stacks and moving them out to the other employee. The latter would build them into full stacks.

Just before the accident, Posey drove his truck down an aisle between full stacks. At the end was a stack of two cartons, and beyond it a full stack. Posey was facing one of the 3′ x 3′ sides, so that the depth of the stack was two feet. Posey tilted his forks downward, inserted them under the short stack and tilted his forks upward. He saw the full stack beyond commence to sway, and the carton at the top of that stack fell on him. It may be inferred that Posey accidentally inserted his forks far enough so that their ends caught under the full stack and caused it to sway.

It would, of course, be obvious to anyone who thought about it that if a carton became dislodged from a high stack, its falling would endanger the operator of the fork lift, and that there was no guard to protect him.

Although Posey had operated fork lifts for several years, he was not familiar with overhead guards, and probably did not know they were available. The dealer's salesman who had sold the truck to Posey's employer thought that the question of overhead guards was discussed, but could not recall whether he

2. Standards of the National Board of Fire Underwriters for the Use, Maintenance and Operation of Industrial Trucks As Recommended by the National Fire Protection Association.

3. Accident Prevention Manual for Industrial Operations, National Safety Council, 2d ed. pp. 12–1 and 12–2.

had recommended purchase of a guard or said the truck could not be used in high stack areas without a guard. Except for the inferences which might be drawn from the fact that Clark designed and offered a guard, there was no evidence that Clark, in 1957, had superior knowledge of the likelihood of an accident of the type which occurred.

Posey's theory appears to be that if there had been a warning notice on the truck, the employer might have purchased a guard and instructed his employees to install it whenever the truck was used among high stacks, and Posey as well as other employees would have been alerted to the importance of using the guard.

In directing a verdict, Judge Dillin concluded that the danger of an object falling upon an unprotected operator was so obvious that the user of the truck would reasonably be expected to know about it.

■■■ Although Indiana law recognizes products liability based on negligence, in the absence of privity, the defect must be hidden, and not normally observable, constituting a latent danger.[4] Although a manufacturer who has actual or constructive knowledge of an unobvious danger in the use of his product is subject to liability for negligence for failure to warn users of the danger, he has no duty to warn if the danger be obvious.[5]

In 1965, Judge Eschbach of the district court for the northern district of Indiana considered a complaint against this defendant, Clark, claiming strict liability for the sale of an allegedly defective and unreasonably dangerous fork lift.[6] He concluded that the doctrine of strict liability for sale of a product "in a defective condition unreasonably dangerous to the user or consumer", as stated in Restatement, Torts 2d sec. 402A is the law of Indiana. We have no reason to disagree.

A warning may be necessary to prevent the product from being unreasonably dangerous, "But a seller is not required to warn * * * when the danger, or potentiality of danger, is generally known and recognized."[7] The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."[8]

Sec. 388 of the Restatement is also instructive with respect to the duty of a supplier of a chattel to warn users where he knows or has reason to know that the chattel is dangerous. One element of liability is that he "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition."

Comment *k*, on that element, says, in part, "However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risk of which he himself knows and which he has no reason to suppose that they will realize."

■■■ Although defendant Clark, as a leading manufacturer of fork lifts, was

---

4. J. I. Case Company v. Sandefur (1965), 245 Ind. 213, 197 N.E.2d 519.

5. Indiana Nat. Bank of Indianapolis v. De Laval Separator Co. (7th Cir. 1968), 389 F.2d 674, applying Indiana law. In the special case of explosives, where a high degree of danger is obvious, but the precautions required in order to protect the user's safety are not, the manufacturer is liable for failure to warn.

Eck v. E. I. DuPont De Nemours & Company (7th Cir. 1968), 393 F.2d 197, applying Indiana law.

6. Greeno v. Clark Equipment Company (N.D.Ind.1965), 237 F.Supp. 427.

7. Restatement, Torts 2d sec. 402A, Comment *j*.

8. Ibid, Comment *i*.

probably more aware of the range of problems and hazards encountered in their use than the ordinary user or operator of fork lifts, we conclude as a matter of law that this is not a situation where only persons of its special experience would realize the danger which might befall an unprotected operator when working in proximity to high stacks of cartons. Plaintiff urges, essentially, that this question ought to be left to a jury, but it is our judgment that there is no evidence to support a finding that Clark had a duty, under the circumstances, to supply a warning notice.

Plaintiff Posey relies heavily on Brandon v. Yale & Towne Manufacturing Co. (E.D.Pa.1963), 220 F.Supp. 855, affirmed (3rd Cir. 1965), 342 F.2d 519. A jury verdict against the manufacturer of a fork lift was permitted to stand. The manufacturer had failed to supply an overhead guard and a load back rest, and failed to warn plaintiff operator that without them the fork lift should not be used for high stacking. There are a number of factual differences between *Brandon* and the case at bar. The truck in *Brandon* was a 90 inch truck, capable of lifting its forks to twelve feet, and presumably unusable in street trucks and low clearance areas. It was used to lift stacks of cardboard to an overall height of seventeen or eighteen feet. It was in this process when an 800 pound load slid off and fell onto plaintiff operator. An officer of defendant manufacturer had familiarized himself with the intended uses. Plaintiff's employer had ordered a guard and load back rest (designed to prevent the load from sliding off the forks), but defendant delivered the machine without them because they were unavailable and plaintiff's employer urgently needed the machine. Defendant manufacturer recognized the danger of using the machine for high stacking without the safety equipment, and warned plaintiff's employer, but did not provide a warning notice for the operator.

There is no suggestion that the *Brandon* fork lift was designed for a type of use where a guard would be unnecessary and impossible to use, as in the case at bar. It was being used in high stacking when the accident occurred, the accident resulted from such use, and the manufacturer conceded the use was dangerous in the absence of the safety devices. None of these facts is true in the case before us. The *Brandon* decision does not purport to apply the law of Indiana, and seems distinguishable in any event.

The judgment is affirmed.