**Bernard J. COLLINS and Marian Collins, Plaintiffs-Appellees,**

v.

**The RIDGE TOOL COMPANY, Defendant-Appellant.**

**No. 73–1337.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1974.

Decided Aug. 13, 1975.

Rehearing and Rehearing En Banc Denied Oct. 14, 1975.

Willard S. Stafford, Madison, Wis., for defendant-appellant.

William L. McCusker, Madison, Wis., for plaintiffs-appellees.

Before PELL, Circuit Judge, CAMP-BELL,* and GRANT,** Senior District Judges.

GRANT, Senior District Judge.

Appellees Bernard J. Collins and Marian Collins brought the present action against appellant, The Ridge Tool Company, for injuries sustained by Bernard Collins while he was using a Rigid 300 Power-Drive designed, manufactured, and sold by appellant. The Rigid 300 is a portable machine used by plumbers for cutting, reaming, and threading pipe. When the machine is used to cut pipe in accordance with the instructions set forth in the Operator's Manual, the pipe is inserted into the unit, the speed chuck (a securing clamp) and centering devices are tightened, and the cutter is applied to the pipe and its blade tightened until it contacts the pipe. Then the power is turned on, and the cutter blade is tightened until the cut is completed. Appellee, a master plumber, had used the Rigid 300 and machines similar thereto on many occasions prior to the accident. Nevertheless, on 28 November 1967, while appellee was using the machine to

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

cut a 12-inch section of pipe, the front of his jacket became entangled in the rotating pipe. The machine toppled over, and appellee sustained severe injuries to his left arm. Subsequently, the arm had to be amputated immediately above the elbow.

In the district court, the jury found both appellant and appellee causally negligent; attributed 65% of the negligence to appellant and 35% to appellee; and assessed total damages in the amount of $247,737.75. After the damages were reduced to reflect the contributory negligence of appellee, judgment was entered against appellant in the amount of $161,029.54 together with costs and interest. Thereafter, an order denying appellant's Motion for Judgment Notwithstanding the Verdict or for a New Trial was entered. Appellant thereupon instituted the present appeal from the judgment and order in the court below.

In support of its position on appeal, appellant Ridge Tool argues initially that it breached no duty to appellee as a matter of law. In this regard, appellant claims that it cannot be held liable where the danger associated with the Rigid 300 was open and obvious and since the possibility of injury from contact with a moving part of the machine was readily apparent to appellee, a man who had owned and operated the machine "hundreds of times". Further, the fact that the dangers inherent in the Rigid 300 were open and obvious, argues appellant, rendered unnecessary the giving of any warning to the user. Finally, with respect to the issue of appellant's duty to appellee, it is argued that the alleged lack of written instructions as to how to operate the Rigid 300 cannot support a finding of liability, given appellee's past experience in using the Rigid 300 as well as his knowledge of its operating characteristics.

Appellant also charges that the district court erred in admitting expert testimony that the Rigid 300 was unreasonably dangerous; in admitting testimony with respect to the design features of the Ri-

gid 700 and a foot switch device; and in its instructions to the jury.

Finally, appellant asserts that there is no credible evidence which supports the jury's apportionment of negligence. In this regard, it is argued that appellee's negligence was clearly equal to or greater than any negligence of appellant; therefore, the jury's verdict, including the individual damage awards, is so excessive as to be unconscionable. Accordingly, appellant urges this Court, for the above-stated reasons, to set aside the verdict and judgment in the court below or, in the alternative, order a new trial.

In response, appellees Bernard and Marian Collins claim that the Rigid 300 was unreasonably dangerous by reason of its design, because the power switch was located in a place where it was inaccessible to anyone operating the machine from the front or left front. Additionally, they contend that under Wisconsin products liability law, the defense of "open and obvious danger" is not available to appellant as a complete bar to recovery. Rather, appellees argue that the conduct on the part of a user of an unreasonably dangerous product is subject to a comparative negligence standard. It is asserted that the doctrine of comparative fault takes into account defenses which would otherwise be absolute and treats them for the purpose of comparison under the name of negligence. In any event, appellees maintain that even if the "open and obvious danger" defense does apply, the inaccessibility of the power switch on the Rigid 300 was a dangerous condition that was not open and obvious to appellee. Rather, it was a condition, says appellee, which most users would not discover, and a danger which most users would not appreciate until they were already entangled in the rotating pipe. Further, because of the inaccessibility of the switch, appellees contend that the potential operator should have been warned to stand near the switch while running the machine. At the very least, appellees argue that appellant had an obligation to pro-

vide full and adequate instructions to potential users of the Rigid 300 regarding its safe operation.

In further response to appellant's position in this appeal, appellees contend that the trial court did not err in admitting expert testimony that the Rigid 300 was unreasonably dangerous; in admitting testimony relating to the Rigid 700 and the foot pedal device; and in its instructions to the jury.

Finally, appellees emphasize that the jury's allocation of causal comparative negligence is supported by the evidence. In this respect, it is urged that the damage awards were neither excessive nor in disregard of applicable law, but rather accurately reflected and compensated appellees for the loss which they sustained. Accordingly, appellees ask this Court to affirm the verdict and judgment entered in the court below.

It is axiomatic in products liability law, and appellant concedes, that a manufacturer is legally bound to design and build products which are reasonably fit and safe for the purpose for which they are intended. Nevertheless, it is equally clear that a manufacturer is under no duty to produce accident or foolproof products. *Zahora v. Harnischfeger Corporation*, 404 F.2d 172, 175 (7th Cir. 1968). Neither is the manufacturer an insurer that its product is incapable of producing injury. *Garrison v. Rohm and Haas Company*, 492 F.2d 346, 351 (6th Cir. 1974). In determining the reasonableness of design, certain factors which should be examined include: 1) conformity of defendant's design to the practices of other manufacturers in its industry at the time of manufacture; 2) the open and obvious nature of the alleged danger; and 3) the extent of the claimant's use of the very product alleged to have caused the injury and the period of time involved in such use by the claimant and others prior to the injury without any harmful incident. *Ward v. Hobart Manufacturing Company*, 450 F.2d 1176, 1182 (5th Cir. 1971). Other relevant factors, which are practical or economic in nature, include: 4) the ability of the manu-

facturer to eliminate danger without impairing the product's usefulness or making it unduly expensive; and 5) the relative likelihood of injury resulting from the product's present design. *Magnuson v. Rupp Manufacturing, Inc.*, 285 Minn. 32, 171 N.W.2d 201, 208 (1969). As to the latter two factors, although we realize, upon our careful review of the record, that there was ample testimony in the court below by appellee's experts that the switch on the Rigid 300 could have been relocated, or that a different switching system could have been incorporated into its design, there was also testimony elicited which indicated that there were no other machines similar to the Rigid 300 utilizing emergency control systems and that the incorporation of such a cut-off device would be costly as well as affect the utility of the product. While we believe that this testimony as to the feasibility or non-feasibility of installing alternative switching systems or relocating the switch on the Rigid 300 is indeed relevant to, and will not be overlooked in arriving at our decision in the present appeal, we are inclined to attach more significance to, and thus we now focus our attention upon, the issue which we believe, because of the particular circumstances involved herein, will ultimately determine the outcome of the instant appeal; and that issue involves the alleged duty on the part of appellant herein to appellee in light of the argument that the danger to appellee, a master plumber with many years experience, was open and obvious.

Appellant would have us follow what is generally known as the "open and obvious" rule enunciated in *Campo v. Scofield*, 301 N.Y. 468, 95 N.E.2d 802, 804 (1950), and the equivalent of which this Court applied in *Posey v. Clark Equipment Company*, 409 F.2d 560 (7th Cir. 1969). The "open and obvious" rule, simply stated, holds that a manufacturer of a product is under no duty to guard against or give notice of dangers which are obvious or patent to the user. *Campo, supra*, 95 N.E.2d at 804. In effect, *Campo* stands for the broad proposition

that liability will not be imposed on the manufacturer unless there is a "latent defect", irrespective of whether or not the injury was incurred by accidental or voluntary contact. *Dyson v. General Motors Corporation*, 298 F.Supp. 1064, 1072 (E.D.Pa.1969). Although this doctrine has received wide support and has been applied in many jurisdictions,[1] including this Circuit,[2] there is an indication that the more recent trend of the cases evidences an increasing dissatisfaction with the *Campo* doctrine and opts instead in favor of an approach which reflects an effort to "discourage misdesign rather than encouraging it in its obvious form", *Palmer v. Massey-Ferguson, Inc.*, 3 Wash.App. 508, 476 P.2d 713, 719 (1970), and which further recognizes that "manufacturers ought to make safer not more dangerous products." *Dorsey v. Yoder Company*, 331 F.Supp. 753, 759 (E.D.Pa.1971). These and other authorities take the view, in general, that no distinction should be made between products whose dangers are obvious or latent to the user, in order to discourage misdesign even in its obvious form. Other commentators have said that the *Campo* doctrine should apply only when plaintiff appreciates the danger inherent in the product. 1 Frumer & Friedman, *Products Liability* § 7.02, p. 117 (1974).

Although we take notice of the fact that this Court has in the past aligned itself with the so-called *Campo* rule, *Posey, supra*, 409 F.2d at 563–564 and *Downey v. Moore's Time-Saving Equipment, Inc.*, 432 F.2d 1088, 1092 (7th Cir. 1970), we would be remiss if we failed to note that both of those cases were based upon and involved the application of Indiana law. In the present appeal, nevertheless, it is undisputed that Wisconsin law governs the issues at bar. *Erie R. Co. v.*

*Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, we are constrained to determine the issues herein presented as we believe the Wisconsin courts would under the circumstances.

The leading Wisconsin case in the area of products liability appears to be *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967), interpreting the earlier holding of *McConville v. State Farm Mutual Automobile Ins. Co.*, 15 Wis.2d 374, 113 N.W.2d 14 (1962). In *McConville*, the Wisconsin Supreme Court stated that the defense of assumption of risk should be treated as contributory negligence. *Dippel*, in turn, explained that the reason for this was to subject the conduct of the user of an unreasonably dangerous product to a comparative negligence standard. Appellee argues, then, that his duty "to use ordinary care to protect himself from known or readily apparent danger", *Dippel, supra*, 155 N.W.2d at 63, defines his duty with respect to open and obvious hazards, and that any negligence on his part should be, and properly was in the trial court, treated as an item of contributory negligence for purposes of comparison with the causal negligence or fault of the appellant under Wis. Stats. § 895.045 (1969). On the other hand, appellant urges us to follow *Yaun v. Allis-Chalmers Mfg. Co.*, 253 Wis. 558, 34 N.W.2d 853 (1948), as standing for an adoption by the Wisconsin Supreme Court of the open and obvious rule concerning products liability.

While we have no quarrel with appellee's interpretation of the law of Wisconsin as it applies to this case, and while we must not in applying that law to the case at bar subscribe to the *Campo* doctrine in its pure sense, we are of the opinion that the question of whether a danger is open and obvious to a user of

1. *Stevens v. Durbin-Durco, Inc.*, 377 S.W.2d 343 (Mo., 1964); *Parker v. Heasler Plumbing & Heating Co.*, 388 P.2d 516 (Wyo., 1964); *Bradshaw v. Blystone Equip. Co. of Nevada*, 79 Nev. 441, 386 P.2d 396 (1963); *Tyson v. Long Mfg. Co.*, 249 N.C. 557, 107 S.E.2d 170 (1959); *Standard Conveyer Co. v. Scott*, 221 F.2d 460 (8th Cir. 1955); *Jamieson v. Woodward & Lothrop*, 101 U.S.App.D.C. 32, 247 F.2d 23 (1957); *Brown v. General Motors Corp.*, 355 F.2d 814 (4th Cir. 1966); *Bowman v. Kaufman*, 387 F.2d 582 (2nd Cir. 1967).

2. *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966); *Neusus v. Sponholtz*, 369 F.2d 259 (7th Cir. 1966).

a particular instrumentality is not a matter which should be determined in a vacuum. Rather, the unique facts of each case should bear on the question, and this, in our opinion, includes the status, intelligence, and more importantly, the training of the particular user involved. In this regard, we believe that the facts of the instant case require us to consider additional factors, some of which have been noted above, in determining whether, under the circumstances of the instant case, the dangers associated with the Rigid 300 were indeed open and obvious to the appellee, Bernard Collins. The first of these factors which we consider to be particularly applicable to the facts of this case is "the extent of [appellee's] use of the [Rigid 300, the product] alleged to have caused [his] injury and the period of time involved in such use by [appellee] . . . prior to the injury without any harmful incident." *Ward, supra,* 450 F.2d at 1182. Second, we are persuaded that a manufacturer's duty to impart information as to the safe use of its product, whether it be by warnings or instructions, is significantly minimized where the user is a member of a particular trade or profession with regard to a danger that is generally known to that trade or profession. *Littlehale v. E. I. duPont de Nemours & Co.,* 380 F.2d 274 (2nd Cir. 1967); *Lockett v. General Electric Company,* 376 F.Supp. 1201, 1209 (E.D.Pa.1974). Certainly the intended user's training and experience must be considered where the issue of a manufacturer's duty to guard against and apprise of danger is concerned. *Helene Curtis Industries, Inc. v. Pruitt,* 385 F.2d 841, 858 (5th Cir. 1967).

■■ With regard to the first factor, it is undisputed that appellee herein had, at the time of the accident, "owned five Rigid 300's", and prior thereto had accomplished a pipe operation with the Rigid 300 "hundreds of times". Appellee further testified that he appreciated and was fully aware of the danger of being entangled in the pipe while it was turning in the machine. As to the second factor, it is uncontested that appellee was a master plumber for several years prior to the date of the accident. Therefore, he had many years of training and experience in using and operating the machinery indigenous to his business, and had attained enough expertise, in fact, to have risen to the status of a master plumber. We are convinced, then, that appellee was a professional in his trade who, because of past experience, had to be fully cognizant of the hazards involved in his work. Accordingly, it is our opinion that although there were no emergency switches or warnings directly on the Rigid 300 itself, and even though there were no warnings or instructions in the Operator's Manual which was furnished with the unit telling the operator where to stand while cutting pipe (except for a photograph which depicts an operator in the process of cutting pipe), we have no alternative but to conclude, on the basis of our review of the record herein, that there is no evidentiary basis, given appellee's knowledge and background, for finding that appellee's injuries resulted from the negligence of the manufacturer. In this regard, we hold that appellee's injury did not result from any inherent defect in the Rigid 300 either in design or faulty construction. Rather, it is inescapable that the unfortunate injury to appellee, which we indeed acknowledge as grave, in our opinion resulted solely from a careless mistake in operation. We have no doubt, therefore, that appellee failed to use ordinary care to protect himself from a danger which he, of all people, should have readily appreciated. *Dippel, supra,* 155 N.W.2d at 63. Accordingly, since we find that the Rigid 300 was reasonably safe for its intended use, taking into account the training and experience of the persons for whose use the machine was intended, and that appellee's negligence was the sole cause of the injuries sustained, we find error in the verdict in the court below. We conclude, therefore, because of our holding that the sole cause of the accident was the negligence of appellee Bernard Collins, that it is unnecessary to address the oth-

er issues which the appellee has raised before this Court.

Accordingly, the judgment of the district court is Reversed and the cause is Remanded for the entry of judgment in favor of appellant, The Ridge Tool Company.

WILLIAM J. CAMPBELL, Senior District Judge (dissenting).

I would have affirmed the judgment of the district court "from the bench" following oral argument, in view of the clear absence of any issue of law upon which reversal might conceivably be premised.

The product in question is a portable machine used by plumbers for cutting, reaming and threading pipe. Its motor is encased in a housing which is mounted on a tripod. The power switch is located in a recessed area on the underside of the housing. If the operator is standing on this side of the machine, the switch is easily within his reach; however, if he is operating the machine from the front or opposite side, the switch is not readily accessible. When Collins' jacket became entangled in the rotating pipe, he was unable to reach the power switch. By the time one of his employees turned the power off, Collins' left arm had been broken, dislocated and mangled, requiring amputation above the elbow.

The Rigid 300 is not equipped with any kind of emergency power cut-off device. Neither the machine nor the operator's manual furnished by the manufacturer contains any warnings alerting the potential user to operate the machine from the power switch side or cautioning against the danger that loose clothing might become entangled.

It was plaintiff's contention that such warnings should have been given and that the Rigid 300's design rendered defendant's product unreasonably dangerous. The design defects alleged by the plaintiff related to the location of the power switch and the absence of any emergency cut-off device. Plaintiff introduced a considerable amount of expert testimony to support these contentions, including evidence regarding the feasibility of relocating the power switch on the machine so that it would be accessible from all operating positions, and evidence that it would have been feasible and relatively inexpensive to equip the machine with an emergency cut-off device ("kill-switch"), located either on the top of the machine or in the form of a foot switch. Without extensively reviewing the evidence introduced by plaintiff, suffice it to say that a considerable amount of evidence, in the form of expert testimony and otherwise, was introduced in support of plaintiff's claim that the Rigid 300's design rendered it unreasonably dangerous, and that the danger of injury was enhanced by the manufacturer's failure to post warnings on the machine or in the operator's manual.

The jury was properly charged with the task of determining whether the design of defendant's product rendered it unreasonably dangerous, and if so, whether this dangerous condition was the principal cause of Collins' injuries. The jury concluded that plaintiff's injuries were caused by the dangerous condition of the product and by the negligence of the plaintiff, apportioning 65% of the responsibility to the defendant and 35% to plaintiff, in accordance with Wisconsin law.

The conclusion reached by the majority is not based upon a finding that the trial court improperly instructed the jury or that plaintiff's theory of liability was legally insufficient. Nor is it grounded upon a finding that evidence was improperly admitted, or that some other trial error was committed. It is based solely on the majority's *factual determination* that defendant's product "was reasonably safe for its intended use . . . and that appellee's negligence was the sole cause of the injuries sustained . . . .".

After reviewing a cold record, the majority thus substitutes their evaluation of the evidence for that of a jury which saw the witnesses and heard their testimony at trial. In my opinion, the result reached by the majority improperly and inexcusably invades the province of the jury. I would affirm.