973 F.2d 1341
 Prod.Liab.Rep. (CCH) P 13,292
Kent KUTSUGERAS, Kathleen Kutsugeras, Kurt Kutsugeras, a
minor by Kenneth J. Quincey, his Guardian ad
Litem, Plaintiffs-Appellees, Cross-Appellants,
v.
AVCO CORPORATION, a Delaware Corporation, Paul Revere
Corporation, a Delaware Corporation, Textron, Incorporated,
a Delaware Corporation, Allied Products Corporation, a
Delaware Corporation, New Idea Corporation, a Delaware
Corporation, Defendants-Appellants, Cross-Appellees,
and
Aetna Life Insurance Company, a Connecticut Insurance
Corporation, Defendant-Appellee.
 Nos. 91-2966, 91-3092.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 8, 1992.
Decided Sept. 1, 1992.
 
 Lynn R. Laufenberg (argued), Mark Thomsen, Cannon & Dunphy, Milwaukee, Wis., for plaintiffs-appellants.
 Frank M. Coyne (argued), Madison, Wis., for defendants-appellees AVCO Corp., Paul Revere Corp., Textron, Inc., Allied Products Corp. and New Idea Corp.
 Joseph B. Tyson, Jr., Michael P. VanAlstine, Foley & Lardner, Milwaukee, Wis., for defendant-appellee.
 Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and BURNS, Senior District Judge.*
 BAUER, Chief Judge.
 
 
 1
 On November 12, 1986, Kent Kutsugeras was maimed in a dreadful accident on his brother-in-law's farm near Neosho, Wisconsin. At the time of the accident, Kutsugeras was picking corn for his brother-in-law with the aid of some powerful machinery, specifically an AVCO New Idea Model 323 corn picker that was pulled by a Model 4020 John Deere tractor. See Appendix. Power was supplied to the picker by means of a power take off ("PTO") unit running from tractor. A PTO on/off lever located inside the tractor's cab was the only way to engage or disengage power to the picker. There was no mechanism that would permit a person standing near the actual picking chains and rollers to turn off the picker.
 
 
 2
 Kutsugeras' injuries resulted from a bizarre series of events. Kutsugeras testified that, while he was driving the tractor with the picker operating, he felt the need to urinate. He stopped the tractor, keeping its engine idling while he dismounted from the cab. He did not disengage power to the picker. The picker's rollers and chains still were operating. Kutsugeras went into the corn in front of the tractor to relieve himself. When he heard the sounds of dogs barking and something crashing toward him through the corn, he moved nearer to the front of the picker believing that the noise of the picker would keep the dogs and their quarry--he suspected a deer--away from him.
 
 
 3
 As he turned to watch what he believed was a deer run past in the corn, a dog struck him on the legs from the rear. He recognized the dog that bumped him; it belonged to his brother-in-law. The bump from the dog caused Kutsugeras to fall. In falling, Kutsugeras' right hand became entangled in the picker's gathering unit. The picker's gathering chains caught his hand and pulled it into the snapping rollers. In an effort to gain leverage to yank his hand free, Kutsugeras brought one leg and then the other into the picker's gathering area. The gathering chains, however, caught first his right leg, then his left, and pulled them into the snapping rollers as well.
 
 
 4
 Kutsugeras testified that he was caught in the running machine for some time before a motorist passing on the highway adjacent to the field noticed him. The motorist shut off the machine and called for emergency services. Kutsugeras specifically testified that he was not attempting to unclog the picker when his hand became entangled. Nevertheless, certain emergency personnel, who spoke with Kutsugeras as they performed the rescue, testified that Kutsugeras explained the events leading up to his injury somewhat differently. At any rate, the lasting result of the accident is clear: the physicians treating Kutsugeras determined that it was necessary to amputate both legs approximately six inches below the knee and his right arm just above the wrist.
 
 
 5
 On October 2, 1989, Kutsugeras, his wife, and their son filed suit against defendants-appellants-cross-appellees AVCO Corporation, Paul Revere Corporation, Textron, Inc., Allied Products Corporation, New Idea Corporation, and defendant-appellee Aetna Life Insurance Company. Suffice to say that through a network of subsidiaries, and various asset sales and purchases, AVCO, Paul Revere, Textron, Allied, and New Idea Corporations (collectively, the "defendants" or simply "AVCO") all were engaged in the design, manufacture, assembly, distribution, or sale of the Model 323 corn picker. Because Aetna Life Insurance Company paid hospital and medical bills for Kutsugeras' treatment, it has a subrogation interest in this lawsuit. Because the citizenship of the parties are diverse and the amount in controversy exceeds $50,000, federal jurisdiction is premised upon 28 U.S.C. § 1332.
 
 
 6
 The complaint alleged that the "corn picker was defective and unreasonably dangerous at the time it was designed, manufactured, distributed, and sold in that it presented a foreseeable and unreasonable risk of injury to persons using the machine, including aggravation and enhancement of injuries in the event of foreseeable entanglement...." R.Doc. 1, Complaint p 20. Kutsugeras also claimed that AVCO was negligent "with respect to the design, manufacture, distribution, and sale of the New Idea Model 323 corn picker in that it failed to exercise proper care with respect to, among other things, the design of the machine from a safety standpoint, including the failure to provide a means by which the machine could be stopped in an emergency by a person who accidentally became entangled...." Id. AVCO denied the allegations and the case was tried to a jury in April 1991.
 
 
 7
 Following Wisconsin common law, the district court submitted a special, two-tier verdict form to the jury. This special form required that the jury assess liability for Kutsugeras' injuries in two phases: the entanglement phase and the enhancement phase. The entanglement phase primarily involved injuries to Kutsugeras' right arm as a result of getting caught in the picker; the enhancement phase involved the aggravated injuries that were inflicted after those caused by the entanglement, specifically, the injuries to his legs.
 
 
 8
 The jury found no causal negligence on the part of AVCO with respect to Kutsugeras' original entanglement in the picker. Notwithstanding that finding, the jury assigned 15% causal negligence to AVCO in the numerical comparison. In its answers to further questions in the special verdict, the jury found AVCO negligent in failing to provide an emergency stop on the picker that could be used by someone, like Kutsugeras, who became entangled in the machine. The jury found that the absence of an emergency stopping device was a cause of Kutsugeras' enhanced injuries, and rendered the picker defective and unreasonably dangerous. The jury also found that Kutsugeras was not negligent after his original entanglement. Nevertheless, in the numerical comparison, the jury assessed 25% negligence to Kutsugeras with respect to his enhanced injuries.
 
 
 9
 Because Wisconsin's comparative negligence scheme forbids recovery if the plaintiff is more negligent than the defendant, the district court was not concerned about the jury's first inconsistent finding--i.e., that the jury found AVCO not negligent with respect to Kutsugeras' getting caught in the machine, but still assigned AVCO 15% of the causal negligence for the initial injuries resulting from entanglement. The jury's second inconsistency--that Kutsugeras was not negligent with respect to his enhanced injuries, but still was assessed 25% in the numerical comparison, however, was more disconcerting. That 25% negligence on the part of Kutsugeras meant that full damages for his enhanced injuries would be reduced by one-quarter.
 
 
 10
 After discussing the matter with counsel, the district court sent the jury back for further deliberation. The jury then crossed out the 75% AVCO/25% Kutsugeras negligence comparison for enhanced injuries and instead found that the absence of an emergency stopping device did not render the picker defective and unreasonably dangerous to users. The jury did not disturb, however, its initial finding that AVCO was negligent in the design of the picker by not providing a means to stop the machine in an emergency. The jury then apportioned 67% of Kutsugeras' injuries to enhancement. By the remaining questions on the special verdict form, the jury totaled $4,200,000 in damages to the Kutsugeras, his wife, and their son for various aspects of injury. The district court entered judgment on the verdict, awarding Kutsugeras 67% of the total damages. AVCO appealed.
 
 
 11
 The critical issue on appeal involves the bifurcation of injuries in the special verdict. As we have discussed, the special verdict form sent to the jury separated Kutsugeras' cause of action into two sections, "original entanglement" and "enhanced injuries." AVCO argues that this two-tier verdict form illegitimately splits Kutsugeras' single cause of action into two claims, thereby immunizing him from responsibility for his enhanced injuries. When AVCO raised this objection at trial, the district court dismissed it:
 
 
 12
 With respect to the objection to the entanglement issue, I realize that counsel like many other students of the law have objected to the enhancement theory. However, it has been applied over a number of years to automobile and I believe malpractice cases. The Court is of the opinion that the highest court, which in this case is the Appellate Court [of Wisconsin], did approve that in a case with a similar factual background. It's disappointing as it was to the Appellate Court that the Supreme Court [of Wisconsin] denied to take direct appeal on the matter. Because it is obviously a matter of first impression in Wisconsin with respect to this type of use of the enhancement theory. [sic] But on the basis of the current law as it stands now, that is the law in Wisconsin, and for that reason the Court has agreed to apply it. Also there does appear to be a factual basis for the application of such a theory in this case.
 
 
 13
 Transcript of Proceeding at Trial ("Trial Trans.") at 1043. On appeal, AVCO contends that the case upon which the district court relied should not have been followed and urges us to find that the submission of the two-tier verdict form, instead of a single negligence comparison between AVCO and Kutsugeras for all of his injuries, was erroneous.
 
 
 14
 We are not persuaded by the AVCO's arguments. As the district court properly found, AVCO simply cannot avoid the effect of a recent Wisconsin appellate court opinion squarely on point. In Farrell v. John Deere Co., 151 Wis.2d 45, 443 N.W.2d 50 (App.1989), a farm worker sued the manufacturers of a corn picker and tractor for the injuries that he sustained when he became entangled in the picker, resulting in the amputation of his arms and legs. The worker, Gordon Farrell, was using the picker and tractor to harvest corn when the machinery stopped operating. Farrell got off the tractor to check the picking equipment, leaving the tractor engine running. At the trial, he was unable to remember if he shut off the tractor's PTO. When Farrell put his hand into the area of the snapping rolls, the picker suddenly started up again, pulling his hand (and eventually both arms and both legs) into the rollers. He was found an hour later by a neighbor who stopped the picker by shutting down the PTO on the tractor. Id. at 53.
 
 
 15
 To assess Farrell's products liability and negligence claims, the Wisconsin trial court divided the accident into two phases: entanglement and enhancement. Id. As to the entanglement phase, the jury first determined that the manufacturers of the machinery were not responsible. Because Farrell was determined to be 70% responsible for his initial entanglement, the manufacturers were exonerated. But, as to the enhancement phase, the jury determined that the manufacturers were negligent for failing to design and install an emergency shut-off switch on the picker. Id. The jury apportioned 65% of Farrell's injuries to the enhancement phase. Id. at 54. The trial court awarded Farrell $966,459.65 in compensatory damages.
 
 
 16
 On appeal, the Wisconsin Court of Appeals upheld the two-tier approach to the farm accident. The court likened the case to crashworthiness and medical malpractice cases where successive tortfeasors may be held liable for tortious conduct. Id. at 55. The court determined:
 
 
 17
 Farrell's contributory negligence in legally causing the accident (the entanglement) and Deere's separate conduct in failing to design and provide an accessible emergency shut-off device to one already entangled in the machine (the enhancement) constituted distinct factors and events contributing to Farrell's total injuries. It was Deere's design and manufacture of a defective product and its negligence in failing to install an emergency stop device alone that caused the subsequent and enhanced injuries. We see no reason in logic or law why application of enhanced injury law should be precluded merely because the successive tort-feasor is alleged also to have tortiously caused the initial accident. Therefore, we conclude that the enhanced injury theory was properly applied to the facts and trial of this case.
 
 
 18
 Id. It takes no great intellectual leap to see that Farrell, if applicable to the instant case, clearly determines that the two-tier verdict form is permissible. The victims' injuries are almost identical, and the claims are interchangeable. Farrell was decided only three years ago and remains good law in Wisconsin. The Farrell ruling, then, should be given effect in the instant case.
 
 
 19
 Nevertheless, AVCO maintains that Farrell does not control. See Defendants' Brief at 31. See also Defendants' Reply Brief at 10. AVCO traces a line of cases to support its two-pronged conclusion that Farrell represents a "complete departure" from the traditional Wisconsin format for submitting verdicts, see Defendants' Brief at 31, and that only the Wisconsin Supreme Court can establish Wisconsin common law. See Defendants' Reply Brief at 12. AVCO essentially contends that a single, unified examination (as opposed to the entanglement/enhancement dichotomy) of comparative liability, preferably governed by the "open and obvious" doctrine, should have been presented to the jury. Put simply, AVCO would have us believe that Farrell represents an anomaly in Wisconsin law that should not be followed.
 
 
 20
 In its brief and at oral argument, AVCO placed significant emphasis on two cases, Yaun v. Allis Chalmers, 253 Wis. 558, 34 N.W.2d 853 (1948), and Collins v. Ridge Tool, 520 F.2d 591 (7th Cir.1975), that it claims more reasonably illustrate governing law in Wisconsin. Yet neither Yaun nor Collins provides controlling authority for the instant case. AVCO argues, for instance, that Yaun, a decision now over four decades old, determined what should have been the single inquiry for determining liability. According to AVCO, Yaun represents the adoption by the Wisconsin Supreme Court of open and obvious danger rule in products liability cases--i.e. that a manufacturer of a product is under no duty to guard against or give notice of dangers which are obvious or patent to the user. See id. at 858-59. Yet, even in Collins v. Ridge Tool, the other major case cited by AVCO, we noted a growing dissatisfaction with the open and obvious rule:
 
 
 21
 Although [the open and obvious rule] has received wide support and been applied in many jurisdictions, including this Circuit, there is an indication that the more recent trend of cases evidences an increasing dissatisfaction with the [open and obvious] doctrine and opts instead in favor of an approach which reflects an effort to discourage misdesign rather than encouraging it in its obvious form, and which further recognized that manufacturers ought to make safer not more dangerous products.
 
 
 22
 Id. at 595 (quotations omitted). In Collins, we did not blindly apply the open and obvious doctrine. Instead, we held that "the unique facts of each case should bear on the question ... whether ... the dangers associated with the [machine] were indeed open and obvious to [the victim]." Id. at 596.
 
 
 23
 Based upon our reading of the case law, Yaun 's open and obvious rule does not control in the case at bar. Surely, since 1948, there has been a development--an evolution, so to speak--of products liability law. Even Collins in 1975 recognized an evolving approach to liability determinations. See Collins, 520 F.2d at 595. Farrell, too, understood that liability based upon enhanced injury had been recognized in Wisconsin since Yaun and Collins. See Farrell, 443 N.W.2d at 54-55. Indeed, Farrell merely applies the well-tested notion of enhanced injuries to farm accident cases. See e.g. Sumnicht v. Toyota Motor Sales, 121 Wis.2d 338, 360 N.W.2d 2 (1984) (crashworthiness); Foley v. City of West Allis, 113 Wis.2d 475, 335 N.W.2d 824 (1983) (seat-belt); Voight v. Aetna Casualty & Surety Co., 80 Wis.2d 376, 259 N.W.2d 85 (1977) (medical malpractice). In our opinion, then, Farrell represents a logical step in legal evolution.
 
 
 24
 This is not to say that the open and obvious rule no longer has force in Wisconsin. On the contrary, that doctrine still is good law in a variety of applications. See Wisnicky v. Fox Hills Inn & Country Club, 163 Wis.2d 1023, 473 N.W.2d 523, 525 (1991) ("[W]e have no hesitation in applying the open and obvious danger rule in diving cases...."); Griebler v. Doughboy Recreational, Inc., 160 Wis.2d 547, 466 N.W.2d 897, 901-02 (1991) (reaffirming and clarifying open and obvious danger rule in diving cases). But as Farrell intimates, the open and obvious danger rule is in no way inconsistent with the entanglement/enhancement dichotomy.
 
 
 25
 Wisnicky, another case upon which AVCO relies, states that "the open and obvious danger doctrine normally concerns a plaintiff's negligence compared to a defendant's ordinary duty of care." Id. at 525. That negligence comparison between victim and manufacturer is exactly what took place in Kutsugeras' trial. In the entanglement phase, the jury found Kutsugeras more negligent than AVCO, thus precluding recovery for his entanglement injuries. But in the enhancement phase, the jury determined that AVCO was primarily negligent by failing to provide an emergency shut-off device. Thus, Kutsugeras was awarded damages for his enhancement injuries only. The logic of the instant case does not conflict with the long line of decisions that implement the open and obvious danger rule. In fact, the principle of open and obvious danger prevented Kutsugeras from recovering for the injuries stemming from his initial entanglement.
 
 
 26
 Farrell, then, is no anomaly in Wisconsin law. It applies well-settled principles in a new context. AVCO's claim that it need not be followed because it is not a decision from Wisconsin's Supreme Court is meritless. In this diversity action, we are constrained to determine the issues presented herein as we believe the Wisconsin courts would under the circumstances. Collins, 520 F.2d at 595. In Affiliated FM Insurance Co. v. Trane Co., 831 F.2d 153, 155 (7th Cir.1987), we stated, "Under the principles of Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state." See also Phelps v. Sherwood Medical Industries, 836 F.2d 296, 306 (7th Cir.1987). We see no evidence to suggest that the Supreme Court of Wisconsin disapproves of Farrell 's logic. We hold that the district court properly applied Farrell--with its two-tier verdict form--to the instant case.
 
 
 27
 AVCO also argues that, "even in the erroneous method of submission to the jury ... [Kutsugeras'] complaint should be dismissed because 1) the defendants breached no duty, and 2) the evidence is insufficient to support the jury finding of negligence in respect to the emergency stop issue." See Defendants' Brief at 13-14. Nevertheless, these alternative claims lack merit. First, the common law duty of a manufacturer under Wisconsin law requires AVCO to "exercise ordinary care in the design, construction and manufacture of its product so as to render such product safe for its intended use." Wisconsin Civil Jury Instruction 3240. See also Greiten v. La Dow, 70 Wis.2d 589, 235 N.W.2d 677, 679 (1975). The Wisconsin courts have held expressly that this duty includes the obligation to design products so as to minimize injuries in the event of foreseeable accidents. See Sumnicht v. Toyota Motor Sales, 121 Wis.2d 338, 360 N.W.2d 2, 16 (1980); Arbet v. Gussarson, 66 Wis.2d 551, 225 N.W.2d 431 (1975). The applicability of this duty to corn picker manufacturers was affirmed in Farrell. Whether the duty was breached was a question of fact resolved by the jury.
 
 
 28
 Second, the record is rife with evidence supporting the jury's finding that AVCO negligently failed to provide an emergency stop device on the picker. Kutsugeras presented considerable evidence, including engineering and medical literature, documenting the occurrence of snapping roller injuries, particularly multiple amputations, for years preceding the design and manufacture of the particular corn picker in issue. Even Wallace McDougall, a retired supervisor of engineering services for AVCO, stated that he was aware that the stalking rollers on the 1965 model New Idea corn picker moved so fast that a person using a six-foot stalk to help unclog a running machine, could not release the stalk quickly enough to prevent his hand from following the stalk into the rollers. See Trial Trans. at 341-42. McDougall admitted that in 1965, before model 323 was distributed or sold, as the person in charge of AVCO's engineering services, he expected people to get caught in the model 323's snapping rollers, and once caught, that they would be unable to turn off the machine. See Trial Trans. at 330-31, 349. We sustain a jury's verdict if there is any credible evidence to support it. See Delvaux v. Ford Motor Co., 764 F.2d 469, 473 (7th Cir.1985). See also Thompson v. Village of Hales Corners, 115 Wis.2d 289, 340 N.W.2d 704, 716 (1983). Therefore, we reject AVCO's claim that the evidence was insufficient. AVCO's remaining claims similarly are dismissed.
 
 
 29
 For the foregoing reasons, the judgment of the district court is AFFIRMED. Because Kutsugeras' conditional cross-appeal depended upon our requiring a new trial, it is hereby dismissed.
 
 APPENDIX
 
 30
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 *
 The Honorable James M. Burns, Senior Judge for the United States District Court for the District of Oregon, is sitting by designation